**Bruce T. COOPER a/k/a Dr. Bruce Cooper, Bruce Cooper, and B.T. Cooper, Individually, and d/b/a Willow Brook Surgery Center and Willowbrook Surgery Center, Appellants,**

v.

**LYON FINANCIAL SERVICES, INC., d/b/a Secured Funding Source and Luxar Corporation d/b/a ESC Medical Systems, Appellees.**

No. 14–99–01367–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 15, 2001.

Rehearing Overruled Jan. 10, 2002.

Grant P. Harpold, Allison B. Johanson, Houston, for appellants.

William Bruce Stanfill, Houston, Tera H. Schreiber, Seattle, WA, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

Appellee, Lyon Financial Services ("Lyon"), d/b/a Secured Funding Source, sued appellants, Bruce T. Cooper a/k/a Dr. Bruce Cooper, Bruce Cooper, and B.T. Cooper individually and d/b/a Willow Brook Surgery Center and Willowbrook Surgery Center ("Cooper") for breach of contract resulting from Cooper's nonpayment of money due under a lease agreement. Cooper counterclaimed against Lyon and sued appellee Luxar Corporation d/b/a ESC Medical Systems ("Luxar"), alleging misrepresentations on the part of Luxar's sales representative.[1] The jury found in favor of Lyon on its claim and awarded Lyon $27,500 in damages and $6,875 in attorney's fees. The jury found Lyon and Luxar engaged in knowing violations of the Texas Deceptive Trade Practices Act ("DTPA"), awarded Cooper zero damages, but awarded Cooper $20,000 in attorney's fees. The trial court rendered judgment on the verdict in favor of Lyon and Luxar but denied Cooper attorney's fees pursuant to a post-verdict motion by Luxar. We affirm.

---

1. Luxar manufactured the laser.

## FACTUAL AND PROCEDURAL BACKGROUND

While attending a seminar in August 1996, Cooper, a cosmetic surgeon, learned about the Luxar Novapulse Laser. Soon after the seminar, Boyd Endres, a Luxar sales representative, contacted Cooper. According to Cooper, Endres told Cooper that, with the laser, there would be no pain, no discoloration, and no need for reoperation, and Cooper could return the laser if Cooper were not satisfied.

On August 26, 1996, Cooper signed a purchase agreement with Luxar and an " 'E Z' Lease Agreement" with Secured Funding Source. The purchase contract indicates a total price of $47,500. The 60 month lease agreement provides for a security deposit of $4,000, monthly payments of $99.00 for months one through nine, and monthly payments of $1254.00 for the remaining months. At the end of the lease, Cooper had the following three options: purchase the equipment at fair market value, renew the agreement, or return the equipment.

Appearing in parentheses above the lease terms is the notation, "Applicable taxes are in addition to the payment shown." The following provision appears above the signature line:

> By signing below, you acknowledge and accept all terms and conditions on the back of this agreement.... You understand and agree that in the event that you are not satisfied with the delivery and installation of the Equipment, you shall only look to entities other than Secured Funding Source such as the manufacturer, installer, or carrier, and shall not assert against Secured Funding Source any claim or defense that you may have with reference to the Equipment or its installation. By signing below, the undersigned acknowledges and accepts all terms and conditions on the back of this agreement.... THIS IS A NONCANCELLABLE/IRREVOCABLE AGREEMENT. THE AGREEMENT CANNOT BE CANCELLED [sic] OR TERMINATED.

Cooper initialed the back of the agreement, which provided that Cooper was "to keep the equipment fully insured against loss with us as a loss payee.... You agree to provide us certificates or other evidence of insurance acceptable to us before this Agreement begins or we will enroll you in our property damages insurance program and bill you a property damage surcharge."

After Cooper received the laser, Endres provided a one-day, in-service training, during which Cooper used the laser on two of his patients. Cooper had not previously performed surgery with a laser, did not make any effort to avail himself of other free training, and did not read the manual before the surgery. The manual contained information about training required for using the laser, locations where training could be obtained, and the risks of using a laser. According to Cooper, "There was no problem with the laser from a functioning standpoint," and he "was somewhat intrigued with the results initially." The patients, however, were not satisfied with the surgery, and Cooper did not use the laser again.

Cooper called Endres twice and told him he wished to return the laser. Cooper did not contact anyone else at Luxar. Cooper agreed the purchase contract with Luxar allowed Cooper to return the laser within 30 days if Cooper did not like the laser. Although Cooper testified he attempted to return the laser, he did not provide his rejection in writing as required by the contract and did not know whether his attempted return was within the 30 day period.

After an initial nonrefundable deposit of $2,000 to Luxar and "some payments [to Lyon] in the very beginning," Cooper stopped making payments. Lyon repossessed the laser, and after notice of intended sale, sold it to another medical group. Lyon sued Cooper for breach of contract seeking the amount still owing on the lease and attorney's fees. Cooper responded, raising the defenses of fraud and misrepresentation, failure of consideration, revocation of acceptance, unconscionability, failure to mitigate, and usury.[2] Cooper also counterclaimed, alleging usury, violations of the DTPA, common-law fraud, and breach of express and implied warranties of merchantability and fitness. He sought revocation of the contract on the ground of unconscionability and recission on the ground of failure of consideration. Finally, Cooper sued Luxar for common law fraud, violations of the DTPA, and negligent misrepresentation.

At trial, Cooper testified about the representations Endres had made regarding the laser and stated the laser had no value to him because "it didn't deliver as represented." Cooper also testified Endres had not told him about the $125.55 property damage surcharge (insurance charge) or the $71.58 personal property tax, for which Lyon had billed him. Other than the initial nonrefundable $2,000 payment, Cooper did not specify any amounts he had paid in relation to leasing the laser. Endres did not testify.

Ronald Caniglia, a physician who uses the Luxar laser in his medical practice, testified Cooper failed to take responsibility for his use of the laser as would be expected of any physician. Caniglia also testified all physicians would know that the laser creates a burn, there will be discom-

fort, and there is always the possibility of needing to re-operate.

At the close of evidence, the trial court directed a verdict in favor of Lyon and Luxar on the issues of unconscionability and breach of warranty. The court denied Cooper's requested questions on revocation of acceptance and usury.

The jury found Cooper and Lyon entered into a written lease agreement, Cooper failed to pay all of the payments under the terms of the lease, and Lyon incurred damages of $27,500 and attorney's fees of $6,875. The jury found Lyon and Luxar engaged in knowing violations of the DTPA and that zero dollars would fairly and reasonably compensate Cooper for the damages caused by that conduct. The jury awarded Cooper $20,000 in attorney's fees. The trial court rendered judgment on the verdict in favor of Lyon and Luxor, but denied Cooper attorney's fees.

## CHALLENGES TO JURY FINDINGS

■ In issues one through four, Cooper challenges the legal and factual sufficiency of the evidence to support the jury's finding of zero damages for Lyon's and Luxar's knowing DTPA violations. Issues one and two rest on Cooper's contention he incurred damages of $47,500, *i.e.*, the purchase price of the laser. Issues three and four rest on his alternative contention he incurred damages of $2,000, *i.e.*, the amount of the nonrefundable deposit.

■ In reviewing a "no evidence" or legal sufficiency of the evidence point, we consider only the evidence and reasonable inferences that tend to support the jury's findings, and we disregard all evidence and inferences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.*,

---

**2.** Cooper also alleged offset, claiming he had not been credited with the amount Lyon received for the sale of the laser after it was

repossessed. Lyon subsequently filed a supplemental petition, in which it credited Cooper for the proceeds of the sale.

774 S.W.2d 666, 668 (Tex.1989); *Penick v. Christensen*, 912 S.W.2d 276, 292 (Tex. App.—Houston [14th Dist.] 1995, writ denied). An appellate court will conclude the evidence is legally insufficient if: (1) there is a complete absence of evidence for the finding, (2) there is evidence to support the finding, but rules of law or evidence bar the court from giving any weight to the evidence, (3) there is no more than a mere scintilla of evidence to support the finding, or (4) the evidence conclusively establishes the opposite of the finding. *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L.Rev. 361, 362–63 (1960)).

■ If we find any evidence of probative force to support the finding, we overrule the point and uphold the finding. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997) (citing *S. States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989)). For this court to sustain Cooper's legal insufficiency challenges, we would have to conclude (1) there was no evidence to support the jury's finding, and (2) the evidence established Cooper's alleged amount of damages as a matter of law. *See Schwartz v. Pinnacle Comm.*, 944 S.W.2d 427, 431–32 (Tex.App.—Houston [14th Dist.] 1997, no writ) (setting forth two hurdles party with burden of proof must meet to succeed in challenging legal sufficiency of evidence and stating that, if more than scintilla of evidence of probative force supports jury finding, appellate court must reject a "no evidence" challenge to that finding).

■ When reviewing a challenge to the factual sufficiency of the evidence, we must examine all of the evidence in the record, both supporting and contrary to the judgment. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Marsh v. Marsh*, 949 S.W.2d 734, 739 (Tex. App.—Houston [14th Dist.] 1997, no writ). After considering and weighing all the evidence, we will sustain the challenge only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Marsh*, 949 S.W.2d at 739.

■ Cooper sought out-of-pocket damages on his DTPA claim. *See Leyendecker & Associates, Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex.1984) (stating DTPA permits plaintiff to recover under out-of-pocket rule). The amount of damages under this rule is measured by the "difference between the value of that which [the plaintiff] has parted with, and the value of that which he has received." *Id.* (quoting *George v. Hesse*, 100 Tex. 44, 93 S.W. 107, 107 (1906)). The jury charge asked the jury to consider the following elements of damage and none other:

1. The difference, if any, in the value of the laser as it was received and the purchase price. The difference, if any shall be determined at the time and place the laser was received by Bruce T. Cooper, and

2. The pecuniary loss, if any, you found was suffered by Dr. Bruce T. Cooper in answer to Question Number 7 [the DTPA question asking about false, misleading, or deceptive acts by Lyon and Luxor].[3]

Cooper's legal and factual sufficiency challenges rest entirely on his testimony that the laser had no value to him. Under

---

**3.** The first part of this instruction tracks the Texas Pattern Jury Charge. *See* State Bar of Texas, Texas Pattern Jury Charges: Business, Consumer, Employment PJC 110.9 (1997) (Sample B).

Cooper's analysis, he suffered either $47,000 in damages (the difference between the purchase price and the value of the laser to Cooper as received) or $2,000 (the difference between what he actually expended and the value of the laser to Cooper as received).

■ For a property owner to testify about the value of his property, the "testimony must show that it refers to market, rather than intrinsic or some other value of property." *Porras v. Craig,* 675 S.W.2d 503, 505 (Tex.1984), *quoted in Pontiac v. Elliott,* 775 S.W.2d 395, 399 (Tex.App.— Houston [1st Dist.] 1989, writ denied). When the owner's testimony affirmatively shows the owner is referring to personal, rather than market, value, the testimony constitutes no evidence of market value. *Porras,* 675 S.W.2d at 505. Thus, in *Elliott,* the court of appeals concluded there was no evidence to support a finding that a used vehicle, represented as new, was worthless despite appellee's testimony the value of the vehicle was "zero in light of the fact that [there was] prior ownership and prior damage to the vehicle. And the repairs, had I known that, no, I would not have bought the vehicle. It would not be worth a cent to me." *Elliott,* 775 S.W.2d at 399. Under the rationale of *Porras* and *Elliott,* Cooper's testimony was not competent evidence on the value of the laser.[4]

Cooper's purchase agreement with Luxar indicates a total price of $47,500 for the laser and associated equipment and services. Additionally, the purchase agreement shows individual unit prices originally totaling $59,305, discounted to $47,500.

Cooper testified there "was no problem with the laser from a functioning standpoint." He agreed the laser was not defective in any way and that it did what the literature said it would do. Cooper also agreed he had no complaints about the laser working up to specifications. Regardless of whether the jury considered the "purchase price" to be $2,000 or $47,500, there was more than a scintilla of evidence to support the jury's implicit finding the value of the laser Cooper received equaled or exceed the purchase price and that Cooper's damages were, therefore, zero. We hold the evidence was legally sufficient to support the award of zero damages for Cooper's out-of-pocket DTPA damages claims.

The only evidence weighing against the jury's finding of no damages was Cooper's subjective testimony the laser had no value to him because the laser did not fulfill representations the laser would produce no pain, no discoloration, and no need for reoperation. There was evidence, however, indicating Cooper was unable to use the laser properly because he did not obtain training recommended for its use and that Cooper's expectations for the laser were unreasonable. We hold the jury's finding is not so contrary to the overwhelming weight of the evidence so as to be clearly wrong and unjust.[5]

We overrule Cooper's issues one through four.

## COOPER'S REJECTED JURY QUESTIONS

■ In issues five and six, Cooper argues the trial court erred in rejecting his

---

4. It is, therefore, immaterial whether appellees objected to Cooper's testimony. *See Porras v. Craig,* 675 S.W.2d 503, 505 (Tex.1984).

5. Cooper also complains the jury's finding of no damages was inconsistent with its findings of liability. The answers favorable to Cooper on liability and the answers of zero dollars on damages do not put the answers in conflict. They merely show Cooper met his burden of proof in the first instance but not in the second. *See Am. Recreational Mkts. Gen. Agency, Inc. v. Hawkins,* 846 S.W.2d 476, 478 (Tex.App.—Houston [14th Dist.] 1993, no writ).

questions on revocation of acceptance and usury. Only issues raised by the pleadings and evidence are to be submitted to the jury. TEX.R. CIV. P. 278. In addition, the party complaining of the failure to include an instruction in the charge must tender a substantially correct instruction or the error is waived. *Id.; Knoll v. Neblett,* 966 S.W.2d 622, 638 (Tex.App.—Houston [14th Dist.] 1998, pet. denied).

In determining whether the evidence raises a question, we apply the same standard that applies to the determination of whether an instructed verdict should be given. *Murphy v. Seabarge, Ltd.,* 868 S.W.2d 929, 932–33 (Tex.App.—Houston [14th Dist.] 1994, writ denied). We must view the evidence and inferences in the light most favorable to the party with the burden of securing the finding, disregarding all evidence and inferences to the contrary. *Id.* at 933. If there is any evidence of probative value to support the question, the trial court may not refuse to submit the issue to the jury. *Id.*

*Revocation of acceptance.* Cooper raised revocation of acceptance as a defense to Lyon's breach-of-contract claim. Cooper's submitted instruction on revocation of acceptance referred to revocation of acceptance of the laser (not the lease), and focused only on notice to the lessor, *i.e.,* Lyon/Secured Funding:

Was there a revocation of acceptance of the laser by Bruce Cooper?

"Revocation" of acceptance must occur within a reasonable time after the lessee discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by the non-conformity. *Revocation is not effective until the lessee notifies the lessor.*

A person "notifies" or "gives" a notice or notification to another by taking some steps as may reasonably [be] required to inform the other in ordinary course whether or not such other actually comes to know of it. Notice, knowledge or a notice or notification received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction.

(emphasis added).

The lease in the present case was a finance lease because it satisfied the requirements of Texas Business and Commerce Code sections 2A.103(a)(7)(A), (B), and (C). First, Lyon/Secured Funding did not select, manufacture, or supply the laser. *See* TEX. BUS. & COM.CODE ANN. § 2A.103(a)(7)(A) (Vernon Supp.2001). Second, Lyon/Secured Funding acquired the laser in connection with the lease. *See* TEX. BUS. & COM.CODE ANN. § 2A.103(a)(7)(B)(Vernon Supp.2001). Third, Cooper's approval of the contract between Lyon/Secured Funding and Luxar was a condition precedent to the effectiveness of the lease. *See* TEX. BUS. & COM. CODE ANN. § 2A.103(a)(7)(C)(ii)(Vernon Supp.2001).

Cooper, as a lessor under a finance lease, could revoke acceptance of the laser if the purported nonconformity substantially impaired the value of the laser and Cooper accepted the laser, "without discovery of the nonconformity if [Cooper's] acceptance was reasonably induced ... by [Lyon/Secured Funding's] assurances." TEX. BUS. & COM.CODE ANN. § 2A.517(a)(2) (Vernon 1994).[6] The lease agreement, however, provided that, in the event Cooper was not satisfied with the laser, he should "only look to entities other than

---

6. The jury found Endres acted as an agent for Lyon in presenting the lease documentation to Cooper. There was no finding Endres was Lyon's agent for all purposes.

Secured Funding Source such as the manufacturer." Under the Uniform Commercial Code ("UCC"), as well, Cooper's remedy for nonconformity of the laser—as opposed to the lease—was against Luxar. *See* Tex. Bus. & Com.Code Ann. § 2A.516 (cmt.1) (Vernon 1994).

To avail himself of this revocation defense, Cooper was required to notify both the lessor and the supplier. *See* Tex. Bus. & Com.Code Ann. § 2A.516(c)(1) (Vernon 1994). Because Cooper was complaining about a defect in the laser, essential notice was to the supplier. *See* Tex. Bus. & Com. Code Ann. § 2A.516 (cmt.1) (Vernon 1994).

Cooper's instruction, however, referred only to notice to Lyon. Cooper's instruction was not substantially correct. *See* Tex.R. Civ. P. 278.

We overrule issue five.

▮ *Usury.* Cooper's proposed usury instructions inquired (1) what was the amount of taxes and all other charges to be paid by Bruce Cooper to Secured Funding Source in addition to the principal amount; (2) what was the principal amount of the loan to be paid by Bruce Cooper to Secured Funding Source; and (3) was the transaction between Secured Funding Source and Bruce Cooper a "devise" for accomplishing a loan of money from Secured Funding to Bruce Cooper.

▮ Former article 5069–1.01(d) of the revised civil statutes, in effect at the time the lease was executed, defined "usury" as "interest in excess of the amount allowed by law." *See* Act of May 8, 1967, 60th Leg., R.S., ch. 274, § 2, 1967 Tex. Gen. Laws 608, 609; (since repealed and recodified) (current version at Tex. Fin.Code Ann. § 301.001(4) (Vernon 1998)). "Interest" was defined as "the compensation allowed by law for the use or forbearance or detention of money; provided however, this term shall not include any time price differential however denominated arising out of a credit sale." *See* Act of May 8, 1967, 60th Leg., R.S., ch. 274, § 2, 1967 Tex. Gen. Laws 608, 609; (since repealed, recodified, and amended) (current version at Tex. Fin.Code Ann. § 301.002(a)(4) (Vernon Supp.2001)). Generally, in order to prove usury, a party must establish the following three elements: (1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of a greater compensation than allowed by law for the borrower's use of the money. *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex.1994).[7]

In his argument in this court, Cooper assumes the "taxes and other charges" constituted compensation to Lyon for use of money. The same assumption underlies his first submitted usury question. The evidence, however, supports the conclusion the charges for property tax and damage insurance were charges for those purposes only. Cooper did not provide the jury, and has not provided this court, with any evidence to support the conclusion that, putting aside these charges, the amount he paid constituted exaction of a greater compensation than allowed by law. The trial court correctly rejected Cooper's jury instructions on usury.

We overrule issue six.

### DIRECTED VERDICTS

▮ In issues seven, eight and nine, Cooper challenges the trial court's rulings on the parties' motions for directed verdicts at the close of evidence. We review the grant of a directed verdict in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. *Qantel*

---

7. Cooper alleged usury as an affirmative de- fense and as a counterclaim against Lyon.

*Bus. Sys., Inc. v. Custom Controls,* 761 S.W.2d 302, 303 (Tex.1988). The movant is entitled to a directed verdict when: (1) a defect in the opponent's pleading makes it insufficient to support a judgment; (2) the evidence conclusively proves the truth of factual propositions that, under the substantive law, establish the right of the movant to judgment; or (3) the evidence is legally insufficient to raise an issue of fact on a fact proposition that must be established for the movant's opponent to be entitled to judgment. *See Knoll,* 966 S.W.2d at 627. When we review the denial of a motion for directed verdict, we are limited to the specific grounds stated in the motion. *Am. Petrofina Co. v. Panhandle Petroleum Prods., Inc.,* 646 S.W.2d 590, 593 (Tex.App.—Amarillo, 1983, no writ).

■ *Unconscionability.* In issue seven, Cooper contends the trial court erred in granting a directed verdict disposing of his unconscionability claims against Luxar and Lyon. In issue eight he contends the trial court erred in denying his motion for a directed verdict on unconscionability.

In his action against Luxar, Cooper pleaded unconscionability only under the DTPA. *See* Tex. Bus. & Comm.Code §§ 17.45(5), .50(a)(3) (Vernon Supp.2001). In his action against Lyon, Cooper pleaded unconscionability under the DTPA, and also pleaded unconscionability as a ground for refusal of enforcement under Texas Business and Commerce Code section 2A.108(a) and as a ground for revocation. *See* Tex. Bus. & Comm.Code § 2A.108(a)

(Vernon 1994); *see also Southwestern Bell Telephone v. DeLanney,* 809 S.W.2d 493, 497–99 (Tex.1991) (Gonzalez, J., concurring) (discussing related doctrines of unconscionability under common law, DTPA, and UCC).[8] Finally, Cooper included refusal to enforce under Texas Business and Commerce Code section 2A.108(a) and revocation as "affirmative defenses" to Lyon's claim.

■ On appeal, Cooper does not refer to his affirmative defenses, and he relies only on the DTPA test of unconscionability. Under the DTPA, " 'Unconscionable action or course of action' means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Comm.Code § 17.45(5) (Vernon Supp.2001). To prove an unconscionable action or course of action, Cooper had to show the defendants took advantage of his lack of knowledge and " 'that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated.' " *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 677 (Tex.1998) (quoting *Chastain v. Koonce,* 700 S.W.2d 579, 584 (Tex.1985)). The relevant inquiry examines the entire transaction, not the defendants' intent. *Chastain,* 700 S.W.2d at 583.

■ Cooper bases his claim of unconscionability on Endres' conduct and on provisions in the lease and sale documents.[9] Cooper, however, provided no evi-

8. In support of his claim for revocation, Cooper cited *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 821 (Tex.App.—San Antonio 1996, no writ). The issue in *Morris* was whether an agreement to arbitrate was unconscionable under Texas Civil Practice and Remedies Code section 171.001. *See Morris,* 921 S.W.2d at 821–22. The court considered

definitions of unconscionability under the DTPA, the UCC, and the common law. *Id.*

9. Cooper contends he never "received" the reverse side of the sales contract and therefore had no reason to believe a reverse side existed. He admitted, however, that he saw the original on the day he signed the contract. Absent fraud, we presume a person knows the

dence Endres misrepresented the terms of the lease. Cooper testified only that Endres did not tell him about the property taxes and the insurance, and Cooper had previous experience with equipment leases that required such payments. Regarding Endres' representation about returning the laser, Cooper admitted one of the contracts allowed him to return the laser within a 30 day period if it did not pass his inspection. Although Cooper testified he signed the agreement in a high-pressure sales meeting, Cooper also stated he (Cooper) called Endres when he (Cooper) decided to purchase the laser. The sales contract shows many original charges deleted and a reduction of almost $12,000 in the final sales price. Cooper, not Endres, possessed the medical training and experience. Cooper had talked with at least one other physician who had used the Luxar laser and was pleased with the results. Cooper had read the general literature regarding lasers. Given the test for unconscionability set forth above and viewing the evidence in the light most favorable to Cooper, we conclude the evidence of Endres' conduct was legally insufficient to raise a question of unconscionability.

■ Cooper also argues the lease agreement was unconscionable on its face. In support, he relies on *Tri–Continental Leasing Corp. v. Law Office of Richard W. Burns*, 710 S.W.2d 604 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). In *Tri–Continental*, the court of appeals was reviewing a trial court's findings that (1) a copy machine was so defective it failed to perform its intended function; and, (2) in effect, the disclaimer provisions in the lease agreement were unconscionable. *Id.* at 607. The *Tri–Continental* court characterized the lease before it as follows:

contents of a document he has signed and has an obligation to protect himself by reading a document before signing it. *Marsh v. Marsh,*

Tri–Continental points to provisions in the lease that provide, in effect, that the lessor has made no representations or warranties "of any kind or nature, directly or indirectly, express or implied, after any manner whatsoever, including the suitability of such equipment, its durability, its fitness for any particular purpose, its merchantability, its condition, ... (and) that the equipment is leased 'as-is.' " The lease further provides that if the equipment does not operate "as represented or warranted by the vendor" or is "unsatisfactory for any reason," the lessee's only claim is against the vendor and that the lessee will nevertheless pay the lessor all the rents payable under the lease.

*Id.* at 606.

Although, like the lease in *Tri–Continental*, the lease in the present case provides that a claim for malfunctioning of the equipment is against the vendor, both the lease and the facts in the present case are otherwise distinguishable. The disclaimer in the present case provided in part:

WE MAKE NO WARRANTY THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANTABLE, EXCEPT FOR THOSE SPECIFIED IN THE MANUFACTURER'S GUIDELINES. YOU AGREE THAT YOU HAVE SELECTED THE SUPPLIER AND EACH ITEM OF EQUIPMENT BASED UPON YOUR OWN JUDGMENT AND DISCLAIM ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY US OR ANY SUPPLIER.

Thus, unlike *Tri–Continental*, the disclaimer in the present case did not state the lessor made no representations. Additionally, the equipment in the present case performed its intended function—it functioned as a laser should function.

949 S.W.2d 734, 742 (Tex.App.—Houston [14th Dist.] 1997, no writ).

We overrule issues seven and eight.[10]

■ **Breach of Express and Implied Warranties.** In issue nine, Cooper contends the trial court erred in granting a directed verdict disposing of his breach of express and implied warranty claims against Luxar and Lyon. The damages attributable to Cooper's breach of warranty claims appear to be the same damages as those attributable to the DTPA claim, which were submitted to the jury. When questioned at oral argument, Cooper's counsel did not argue the breach of warranty damages differed from the DTPA damages, but stated only that submission of the breach of warranty claims would have provided the jury with another chance to have found a basis for damages. Therefore, even if all of Cooper's liability claims had been submitted to the jury, the finding of zero damages would have remained the same.

We have upheld the jury's findings of zero damages on the DTPA issues submitted to the jury. Even if the trial court erred in granting a directed verdict against Cooper on his breach of express and implied warranties claim (and we do not so conclude), the finding of no damages renders that error harmless. *See Canales v. Nat'l Union Fire Ins. Co.,* 763 S.W.2d 20, 23 (Tex.App.—Corpus Christi 1988, writ denied) (holding, when damages are the same on both issues submitted and those denied and appellants requested no damage issues other than those submitted, any error in submission of liability theories was harmless).[11]

We overrule issue nine.

## ATTORNEY'S FEES

■ In issue ten, Cooper argues (1) the trial court erred in not awarding him attorney's fees in accordance with the jury's verdict and (2) the evidence was legally insufficient to support the jury's award of $20,000 in attorney's fees to Cooper. In issue 11, Cooper argues the evidence was factually insufficient to support the jury's award of $20,000 in attorney's fees to Cooper.

The trial court rendered judgment on the jury's verdict awarding Cooper zero damages, and we have overruled Cooper's challenges to the jury's verdict. Cooper is not entitled to attorney's fees because he received no damages. *See Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 230–31 (Tex. 1990); *Acad. Corp. v. Interior Buildout & Turnkey Construction, Inc.,* 21 S.W.3d

---

10. When we review the denial of a motion for directed verdict, we are limited to the specific grounds stated in the motion. *American Petrofina Co. v. Panhandle Petroleum Prods., Inc.,* 646 S.W.2d 590, 593 (Tex.App.—Amarillo, 1983, no writ). Cooper made no argument in defense of his own motion. In the record before this court, Cooper's argument against appellees' directed verdict on unconscionability was only, "The evidence on unconscionability came from their own witness, the person that knew the most about luxar [sic], their salesman. That's undisputed. This particular laser was an updated version of the laser, and he had all kinds of opportunities to—" Additionally, there is no formal order or recital in the judgment indicating the trial court overruled appellant's motion for a directed verdict. *See Southwestern Materials Co. v. George Consol., Inc.,* 476 S.W.2d 454, 455 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.) (holding appellate court will review ruling denying motion for directed only if ruling is recited in formal order or judgment).

11. In *Canales,* the appellate court also observed the damages issues were not conditioned on the liability issues. *Canales,* 763 S.W.2d at 23. In the present case, the damages question was conditioned on the liability question. Unlike *Canales,* however, the jury in the present case found in favor of the appellant on the liability issue on which the damages question was conditioned.

732, 743–44 (Tex.App.—Houston [14th Dist.] 2000, no pet.).

We overrule issue ten. Given our disposition of issue ten, we need not address issue 11.

We affirm the judgment of the trial court.