Affirmed and Opinion filed September 19, 2006








Affirmed and Opinion filed September 19, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00480-CV

____________

 

BILLY JOE WATTS, Appellant

 

V.

 

BHP BILLITON PETROLEUM (AMERICAS),
INC.,
Appellee

 



 

On Appeal from the 61st
District Court

Harris County, Texas

Trial Court Cause No. 02-62918

 



 

M E M O R A N D U M   O P I N I O N








Appellant, Billy Joe Watts, appeals from a take-nothing
judgment.  Watts sued appellee, BHP Billiton Petroleum (Americas), Inc. (BHP),
alleging age discrimination when appellee failed to hire Watts as a site
facilities construction manager.  The jury found that age was a motivating
factor in appellee=s failure to hire; it also found that
appellee acted with malice.  In spite of these findings, the jury found that
Watts suffered no actual damages, but then awarded punitive damages in the
amount of $750,000.00.  Because the jury did not award any actual damages,
however, the trial court refused to award Watts the punitive damages.  In three
issues, Watts attacks the take-nothing judgment.  In his first and second
issues, Watts contends the evidence was both legally and factually insufficient
to support the jury=s finding of no damages.  In his third
issue, Watts argues the jury=s findings of age discrimination, malice,
and punitive damages are in irreconcilable conflict with its finding of no
actual damages.  We affirm.

Factual and Procedural Background

In 2002, Billy Joe Watts met with a friend of his, Mike
Pauche.  The two worked on projects whose goals were to develop, fabricate, and
deploy oil platforms in various bodies of water around the world.  Having
worked together on a project in the past, the two began discussing their
current assignments.  Pauche informed Watts that he was currently working on a
project off the coast of Trinidad and Tobago called the Angostura Project, and asked
if Watts would be interested in working on that project as well.  Watts
expressed interest, and Pauche informed him that Peter Johnson was the person
to contact regarding a possible position as the site facilities construction
managerCthe role Watts had
performed on a previous project with Pauche.

After several attempts to contact Johnson, Watts finally
talked to him on the telephone on March 25, 2002.  Johnson inquired as to Watts=s age, and was not
encouraged to learn that Watts was 69 years old at the time.  Johnson told
Watts that he could not entrust such an important job as site facilities
construction manager to someone of Watts=s age.  Johnson
then reiterated the point in an email to Watts later that day.  Although Watts
found another job with Mustang Engineering on April 12, 2002, he filed a
complaint with the Equal Employment Opportunity Commission (EEOC).  After the
EEOC did not determine BHP was liable, Watts commenced this lawsuit.








At trial, BHP introduced much evidence and testimony
regarding the three phases for a platform construction project: (1) engineering
and conceptual design;  (2) fabrication;  and (3) installation.  In the first
phaseConce oil has been
foundCengineers design
the platform necessary to extract the oil.  The focus of this phase is to
determine whether it would be profitable to build and deploy the platform
considering issues such as the cost of the platform versus the amount of oil to
be harvested.  Not until the board of directors has seen all of the information
from the first phase does it approve funding to actually fabricate and then
install the platform.  BHP also introduced evidence that a site facilities
construction managerCas the name would implyCoversees the
fabrication of the platform.  Thus, until the board of directors releases funds
for construction, there is no site facilities construction manager position to
fill.

According to testimony, it was not until 2003 that the
board had approved the plans for the Angostura Project, and thus the position
Watts was seeking became available. At that time, Johnson was no longer working
on the Angostura Project, and the site facilities construction manager position
was filled by Reginald Picou on April 14, 2003.  Picou had worked with one of
the engineers on the project, Chuck Willis, in the past and so was specially
sought out to fill the position.[1] 
In May 2003, Watts left the position he had obtained the previous year with
Mustang Engineering.

Watts claimed damages for two periods of time.  The first
was May 25, 2002Cthe date of Johnson=s statement and
emailCuntil April 12,
2002Cthe date when
Mustang Engineering hired Watts.  The second time period was April 14, 2003Cthe date Picou was
hiredCuntil May 2003Cthe date when
Watts left Mustang Engineering.  According to Watts, at minimum he was due
damages for the full amount Picou received ($72 an hour plus per diem) for the
first period because he had not yet secured alternate employment; he also
claims he is due the difference between his hourly rate at Mustang Engineering
of $45 an hour and Picou=s rate and per diem at BHP as damages for
the second period.  Watts=s expert calculated damages in the amount
of approximately $427,000; however, those damages included all phases of the
project and time periods other than the two listed above.  








BHP contended below that there could be no actual damages
for the first time period because no position existed for Watts to fill; there
also could be no damages for the second time period because Watts had mitigated
his damages fully.  According to evidence, Picou consistently commanded a higher
rate than Watts had ever earned.  Additionally, Watts received benefits through
his employment at Mustang Engineering, whereas Picou did not at BHP.  Thus,
there were no damages for the second time period.  The jury evidently agreed,
and awarded no actual damages.  

Arguing that the verdict cannot stand, Watts raises three
issues.  In two, he contends the evidence was legally and factually
insufficient to support the jury=s finding.  In the
third, he argues the jury=s answers are in irreconcilable conflict
because the jury found age discrimination, malice, and awarded punitive
damages.  We affirm.

Analysis

I.        Sufficiency
of the Evidence

Watts raises two issues regarding the sufficiency of the
evidence.  In his first, he argues the jury=s finding of no
actual damages was Aso against the great weight and
preponderance of the evidence as to be manifestly unjust and inadequate as a
matter of law.@  In his second, Watts contends Athere is no
evidence supporting the jury=s finding of zero damages and Watts proved
his damages as a matter of law.@  Stated differently, Watts contends in
his first issue that the evidence is factually insufficient, and in his second
that it is legally insufficient.  We will address Watts=s legal
sufficiency issue first, then turn to his factual sufficiency argument.

A.      Legal
Sufficiency








When conducting a legal sufficiencyCor no evidenceCreview, we view
the evidence in the light favorable to the verdict, crediting favorable
evidence if reasonable jurors could, and disregarding contrary evidence unless
reasonable jurors could not.  City of Keller v. Wilson, 168 S.W.3d 802,
807 (Tex. 2005).  A party attacking an adverse finding on an issue on which she
had the burden of proof must demonstrate on appeal that the evidence
establishes, as a matter of law, all vital facts in support of the issue.  Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).  We must
examine first the record for evidence supporting the finding while ignoring all
contrary evidence.  Id.  If there is no evidence to support the finding,
then we will examine the entire record to determine if the contrary proposition
is established as a matter of law.  Id.  We will not reverse unless the
contrary proposition is conclusively established.  Id.  Watts cannot
meet this burden.

BHP introduced ample evidence supporting the jury=s finding. 
According to the evidence, no job existed during the first period of timeCthe time of
unemployment.[2] 
Without an available job, there could be no salary to pay anyone.  Therefore,
even had BHP determined it would hire Watts, the work and pay would not have
begun until 2003.  Because this evidence supports the jury=s finding, we will
not turn our attention to contrary evidence.  See id.  However, we must
now determine if the evidence was legally sufficient to support the jury=s finding of no
damages in light of the pay difference between Picou and Watts during the
second period.

Several witnesses testified concerning Picou=s rate per hour
and per diem.  Unquestionably, Picou=s hourly rate was
greater than Watts=s.  However, two significant facts
militate against Watts=s position and support the jury=s finding.  First,
Picou consistently received compensation at a higher rate than Watts and,
therefore, the evidence supports a finding that Watts would not have received
the same rate as Picou.  Second, Picou received no benefits while working for
BHP, whereas Watts received benefits at Mustang Engineering.  No evidence was
introduced regarding the value of the benefits to prove whether or not Watts
truly made less than Picou; thus, the jury could have determined that there was
no actual difference in compensation.  Under either formulation or
interpretation of the evidence, the jury had sufficient evidence to support its
finding of no damages, whether considering the first or second periods of time,
or both.  We overrule this issue.








B.      Factual
Sufficiency

Watts also raises a challenge to the factual sufficiency of
the evidence supporting the jury=s award of no
actual damages.  When a party had the burden of proof at trial on an issue, and
raises a factual sufficiency challenge to an adverse finding on that issue, we
must consider and weigh all of the evidence.  Id. at 242.  We will set
the verdict aside only if the evidence is so weak or if the finding is so
against the great weight and preponderance of the evidence that it is clearly
wrong and unjust.  Id.  Of course, in conducting our review, we may not
merely substitute our judgment for that of the jury.  Golden Eagle Archery,
Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).  The jury is the sole
judge of witness credibility and the weight to be given to a witness=s testimony.  As
above, Watts cannot overcome this burden and we will not set aside the jury=s verdict.

We have discussed already the evidence supporting the jury=s verdict.  We
will now discuss the contrary evidence and then determine whether the evidence
as a whole was factually insufficient to support the verdict.  As an initial
matter, we hold that the evidence supporting the verdict was not so weak to
make the verdict clearly wrong and unjust.  The evidence concerning the time
line of the project and Picou=s typical wages was not seriously
disputed, and it was corroborated throughout the trial.  However, Watts
introduced some evidence to support his contentions, which we now examine.

Watts relies chiefly on the testimony of his expertCan economist.  The
expert=s testimony placed
total damages at approximately $427,000.  However, those damages included all
three phases of the project.  As the testimony indicated, Watts sought a
position that would exist in the second phase of the project, with the
potential to carry forward into the third phase.  Yet the expert included
categories in his report to discuss damages for each of the phases.  BHP did
not produce any controverting expert testimony regarding damages.  Thus,
according to Watts, the jury had no other evidence to consider on the issue of
damages and could not have found zero damages.  We disagree.








The jury considered the evidence and reached two
conclusions: (1) there was no job during the first period for which Watts
sought damages; and (2) Watts fully mitigated his damages for the second
period.  No expert testimony was necessary to support these findings.  The only
evidence that a job actually existed during the first period was the
implication that Mike Pauche would not have directed Watts to seek a position
if it did not exist.  Yet Watts never produced any evidenceCother than
suppositionCthat there was a job.  Rather, the evidence consistently
indicated that the position did not become available until 2003Ca year after Watts
was rejected.  Therefore, the jury could conclude without the aid of expert
testimony that without a job, there could be no salary, and thus no basis to
award damages for the first period of time.  








Watts=s expert also concluded that BHP valued
the site facilities construction manager position at the rate it paid Picou.  Therefore,
Watts was due the difference between his pay on the job he took at Mustang
Engineering to mitigate his damages, and Picou=s rate at BHP. 
This conclusion was based on the basic economic theory that the market will pay
what it can bear for any good or service.  However, what Watts did not prove
was that the market will always choose to pay the highest price it will bear. 
In other words, there are timesCas BHP testimony indicated was the
situation here with PicouCwhen a buyer will choose to pay a premium
for a particular good or service due to quality.  Additionally, Watts=s expert did not
testify that a buyer will automatically offer to pay the highest price it can
bear if it can purchase the same good or service for less.  The testimony was
consistent in that Picou regularly commanded a higher income than Watts on any
particular project for very similar work.  According to testimony, the reason
was Picou=s connection with certain workers on projects, his
certifications, reputation, and his ability to negotiate for high pay.  BHP=s witnesses also
testified that given a range of possible pay for someone like Watts or Picou,
there is a sliding scale; Picou consistently earned at the top of the scale,
and Watts did not.  BHP=s choice to pay a premium for a particular
professional does not mean that Watts is entitled to the difference in pay. 
The evidence was sufficient to support a finding that Watts would not have
received Picou=s rate, even if hired.  However, there is another
foundation for the jury=s finding.

BHP hired Picou as an independent contractor.  He received
no benefits.  Conversely, Watts received benefits at Mustang Engineering.  There
was no evidence regarding the value of those benefits.  BHP questioned Watts=s expert regarding
the value of the benefits.  The expert had not taken the benefits into account
and, as a result, could not determine the extent of mitigation.  The jury could
conclude from this evidence that Watts had mitigated his damages fully by
receiving a form of compensation Picou did not receive.  

In summary, the evidence was factually sufficient to
support the jury=s finding of no actual damages.  As to the
first period, the evidence was sufficient to prove that no job existed and thus
there could be no damages.  Concerning the second period, the jury had
sufficient evidence to determine that Watts had mitigated his damages fully,
either because he could not command Picou=s rate, or because
his benefits leveled out any disparity.  The evidence on each of these points
was not so weak and the finding was not so against the great weight and
preponderance of the evidence that the verdict was clearly wrong and unjust. 
We overrule this issue.

II.       No
Conflict in the Jury=s Answers

Taking a different tack, Watts argues that the jury=s answers finding
age discrimination, malice, and awarding punitive damages are in irreconcilable
conflict with its finding of no actual damages for the first period.  Simply
put, Watts contends that if a jury finds age discrimination, there must have
been a job in existence at the time.  We disagree.  The case law does not so
readily support Watts=s position as he supposes; we find the
jury=s answers are
reconcilable.








We note first that a finding favorable to a party on
liability does not render a conflict with a finding of zero damages.  See
Cooper v. Lyon Fin. Services, Inc., 65 S.W.3d 197, 204 n.5 (Tex. App.CHouston [14th
Dist.] 2001, no pet.);  Am. Recreational Markets Gen. Agency, Inc. v.
Hawkins, 846 S.W.2d 476, 478 (Tex. App.CHouston [14th
Dist.] 1993, no writ).  However, we must also turn our attention to Watts=s argument that
the jury=s findings
established as a matter of law that a job existed at the time of rejection, and
so damages necessarily were due for the first period.

Watts relies on certain cases stating that a prima facie
case of discrimination may be proven by demonstrating (1) that complainant
belongs to the protected class, (2) she applied and was qualified for a job for
which the employer was seeking applicants, (3) despite her qualifications, she
was rejected, and (4) after her rejection, the position remained open and the
employer continued to seek applicants from persons of complainant=s qualifications. 
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Another
formulation of a prima facie case is (1) complainant is a member of the
protected class, (2) she applied and was qualified for a position for which the
employer was accepting applications, (3) despite her qualifications, she was
rejected, and (4) the position remained open or was filled by another person
outside of her protected class.  Equal Employment Opportunity Commission v.
Joe=s Stone Crabs, Inc., 296 F.3d 1265,
1273 (11th Cir. 2002).  Although both of these formulationsCwhich are nearly
identicalCindicate that the employer must have been accepting
applications, neither carries a presumption of when work would begin.  Stated
differently, it is logical that an employer would seek applicants in advance of
a hiring need.  Thus, as was argued in this case, an applicant could be
rejected for a job that would not begin for some period of time, and still have
no damages because she had begun another job within that period of time; she
would have mitigated her damages even though a hiring decision was made on an
improper basis such as age.  








Additionally, it is axiomatic that if there is no job,
there can be no damages.  See, e.g., Swint v. Pullman-Standard,
539 F.2d 77, 103 (5th Cir. 1976) (stating that a defendant may avoid liability
by either showing there were no vacancies to fill, or that the discriminatee
seeking back pay could not have been assigned to that position because of the
unavailability of vacancies she was able to fill); Marshall v. Airpax
Electronics, Inc., 595 F.2d 1043, 1045 (5th Cir. 1979) (holding that a
finding of no vacancies would support a finding that there was no entitlement
to back pay).  Here, the jury could have determined that BHP informed Watts
that it would never hire him due to his age while at the same time determining
that there was no current vacancy for him to fill.  Stated differently, the
jury could have found that BHP preemptively refused to hire Watts because of
his age, even though the position would not become available for a year.  By
the time the job became available, Watts had mitigated his damages, and so
there was no relief to grant for actual damages.  The jury=s answers are not
irreconcilable, rather they are consistent with the evidence.  We overrule
Watts=s final issue.

Conclusion

Having overruled each of appellant=s three issues, we
affirm the judgment of the trial court.

 

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed September 19, 2006.

Panel consists of
Justices Hudson, Fowler, and Seymore.









[1]  Although not addressed in either party=s brief, we note that Picou also falls into the class
of persons age discrimination laws protect.  





[2]  Watts argues that the jury=s findings in the other questions necessarily mean
that there was a job available in March 2002, when Johnson rejected Watts.  For
reasons we explain below concerning Watts=s
third issue, we disagree.