

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00028-CV

_____


WILLIAM C. CURTIS AND TINA CURTIS, Appellants

V.

JAMES HUMBERTO URBINA, M.D., AND CHRISTUS HEALTH ARK-LA-TEX D/B/A
CHRISTUS ST. MICHAEL HEALTH SYSTEM, Appellees



On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 12C1341-005



Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Chief Justice Morriss
Dissenting Opinion by Justice Carter


_____

*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

The medical malpractice claims of William C. Curtis and Tina Curtis against Christus Health Ark-La-Tex d/b/a Christus St. Michael Health System (Christus) were rejected by the trial court's directed verdict, and they appeal. Because the Curtises failed to challenge all grounds of the trial court's directed verdict in their opening brief, they have forfeited any alleged error.

In September 2010, William was working outside in the heat when he suddenly "felt a little woozy" and experienced hearing loss. William, who had been in administration in the healthcare field and was at the time employed by Neurological Associates of Texarkana, believed that he may have suffered a stroke. He asked his son, who worked at Christus, to take him to Christus' emergency room. Once there, William was seen by a teleneurologist who diagnosed him with benign positional vertigo (BPV), expressed doubt as to whether William had had a stroke, and requested imaging that ultimately revealed the absence of stroke, but showed that William had two vertebral arteries that were "very small." The teleneurologist also recommended consultation with an "[i]n-house" neurologist, if available.

The following day, William was seen by James Humberto Urbina, M.D., a doctor of internal medicine—not neurology. Urbina testified that he decided not to consult with an on-site neurologist before manipulating William's neck in applying Dix-Hallpike and Epley maneuvers, which are designed to diagnose and treat BPV. Immediately after Urbina performed these maneuvers, described by the Curtises as "violent," William's blood pressure crashed, and he vomited and experienced double vision. After an evaluation by Dr. Khalid Malik, a neurologist

2

connected to Wadley Hospital (Wadley), the other local hospital, William was diagnosed with a brain stem stroke.

The Curtises sued Urbina[1] and Christus for medical negligence. With respect to Urbina, the Curtises alleged that his failure to consult an on-site neurologist and performance of the neck maneuvers, which were allegedly contraindicated given his stroke symptoms and the imaging revealing his small vertebral arteries, fell below the standard of care that would be used by prudent physicians of internal medicine presented with the same or similar circumstances. The Curtises claimed that Urbina's performance of the neck maneuvers proximately caused William's stroke and resulting damages.

The Curtises also asserted two causes of action for negligence against Christus. In one claim, the Curtises alleged that Christus was directly negligent "for not arranging for in-person neurology services for its stroke program," that an "in-person" neurologist would have prevented the performance of the allegedly-contraindicated neck maneuvers, and that William would not have suffered the damages caused by Urbina resulting from the neck maneuvers. The Curtises' second claim alleged Christus was negligent for "failing to inform recipients of its marketing efforts that . . . it did not actually have an on-site neurology service"; but-for this false advertising, William would have gone to Wadley; Wadley had an on-site neurologist; and Wadley's neurologist would have prevented the performance of the neck maneuvers, which proximately caused William's injuries. The marketing materials the Curtises referenced were Christus' CEO reports touting its certification as a primary stroke center sent to Neurology Associates of Texarkana.

_____
[1]Urbina is not a party to this appeal.

3

William testified he was misled into believing that Christus had an on-site neurologist available at all times because the reports stated that (1) Christus had "[a]n Acute Stroke Response Team-available 24/7/365," (2) "[t]he CSM Stroke Team [wa]s led by neurologist Nancy Griffin, M.D., who serves as the Medical Director," (3) "[c]omplementing this care is medical expertise access to recognized experts in the field of neurology via teleneurology," and (4) "[t]eleneurology, available 24/7/365, serves as an asset to our Stroke Team and complements patient care provided by the neurologist."[2]

At trial, when asked if there was an on-site neurologist, Urbina testified that Christus "did not provide one." The Curtises also testified that Urbina told them Christus did not have an on-site neurologist on the day the neck maneuvers were performed. On the day the maneuvers were performed, Malik went to Christus to evaluate William "[b]ecause they needed a live neurologist" and "really needed help." However, during Christus' case-in-chief, Griffin testified that she looked at her calendars from September 2010, which she did not bring to trial, and testified that she must have been available because she was not out of town and was otherwise available for neurological consultation "24/7."

After Christus presented this evidence, it moved for directed verdict on each element of Urbina's negligence claims. Christus argued that the two expert witnesses presented by the Curtises at trial, William and Malik, did not present evidence of the standard of care for hospital advertising and also failed to establish that the standard of care applicable to Christus required it to provide an on-site neurologist. On the issue of proximate cause, Christus argued there was no

---

[2]The Curtises also alleged vicarious liability claims against Christus that were abandoned at trial.

evidence that it could have foreseen (1) that William would be injured as a result of its advertising, (2) that Urbina would not know of Griffin's availability, or (3) that Urbina would choose not to consult an on-site neurologist.

In granting Christus' motion for directed verdict, the trial court made the following specific findings:

> The negligence alleged against [Christus] was that there was no neurologist available to be consulted. The evidence in this case that's been presented, the Court finds there can only be one reasonable conclusion drawn from that, and that is that there was a neurologist that was available from [Christus]. Why that neurologist was not called, why Dr. Urbina may or jury may have some evidence that says that they can consider that Dr. Urbina may have said there was no neurologist, but whether or not Dr. Urbina decided to call a neurologist, was aware that there was a neurologist to call, all of that would be a fact issue for the jury to decide, but that is not -- if anything, that's an intervening fact or an intervening cause with regard to [Christus'] liability in this matter. The Court's going to find that there is no cause in fact, that there is a problem with proximate cause. Court's going to grant directed verdict for [Christus] . . . .
>
> Court's going to find that there is no causal link [on the negligent advertising claim]. The fact that the -- even if the misrepresentations were negligent, even assuming that they were negligent, all that did was get him to [Christus] . . . as opposed to Wadley, and there's still no causal relationship between being at [Christus] versus Wadley in the injury that has occurred. . . . The Court's going to grant directed verdict.

The Curtises' claims against Urbina were presented to a Bowie County jury, which determined that Urbina's negligence, if any, did not proximately cause William's injury. The trial court entered a take-nothing judgment on the Curtises' claims against Urbina, and the Curtises do not appeal that portion of the judgment.[3] However, they appeal the directed verdict rejecting their claims against Christus.

---

[3]As a result of the jury's verdict, which found either that Urbina was not negligent or that his negligence did not proximately cause William's injuries, or both, Christus argues that the Curtises were not harmed by the entry of a

"On appeal, the appellant must challenge all independent grounds supporting the judgment." *Shirley v. Butcher*, No. 06-16-00089-CV, 2017 WL 1538164, at *3 (Tex. App.—Texarkana Apr. 27, 2017, pet. denied) (mem. op.) (citing *Gross v. Carroll*, 339 S.W.3d 718, 723 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.)). "If he does not do so, the appellate court will affirm the judgment of the trial court." *Id.* (citing *Gross*, 339 S.W.3d at 723; *Britton*, 95 S.W.3d at 681); *see Taylor v. Medtox Diagnostic, Inc.*, No. 06-17-00032-CV, 2017 WL 4818623, at *5 (Tex. App.—Texarkana Oct. 26, 2017, pet. denied) (mem. op.); *Oliphant Fin. L.L.C. v. Hill*, 310 S.W.3d 76, 77–78 (Tex. App.—El Paso 2010, pet. denied). This rule applies to directed verdicts. *See Rush v. Ace Am. Ins. Co.*, No. 01-18-00402-CV, 2019 WL 2932846, at *6 (Tex. App.—Houston [1st Dist.] July 9, 2019, no pet. h.) (mem. op.); *Barton v. Garza*, No. 04-14-00207-CV, 2015 WL 1393428, at *1 (Tex. App.—San Antonio Mar. 25, 2015, no pet.) (mem. op.); *Woodrum v. Long*, 527 S.W.2d 281, 283 (Tex. App.—Austin 1975, no writ).

In their appellate brief, the Curtises argue that the trial court erred in granting the directed verdict because there was conflicting evidence as to whether an on-site neurologist was available at the time of William's hospitalization and whether Christus misrepresented that its stroke center

---

directed verdict against them. While courts do not generally engage in harm analysis if there is error in the granting of a directed verdict, "the Texas Supreme Court has held that a procedural error in granting a directed verdict before the close of evidence did not require reversal where no harm was shown." *Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680, 689 (Tex. App.—San Antonio 2012, no pet.) (quoting *State Office of Risk Mgmt. v. Martinez*, 300 S.W.3d 9, 12 (Tex. App.—San Antonio 2009, pet. denied) (citing *Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 82 (Tex. 2003)); *see Cooper v. Lyon Fin. Servs., Inc.*, 65 S.W.3d 197, 209 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *see also* TEX. R. APP. P. 44.1(a)(1) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably caused the rendition of an improper judgment . . . ."); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam) ("The [harmless error] rule applies to all errors."). Here, as explained below, error is forfeited.

6

was staffed with an on-site neurologist. These arguments address the negligence element of breach. While the brief recites the petition's claims that Christus' alleged negligence proximately caused William's injuries, the brief fails to adequately address the trial court's directed verdict on the element of proximate cause.[4]

"Proximate causation embraces two concepts, both of which must be present: the cause in fact of an event and the foreseeability of that event." *Hall v. Huff*, 957 S.W.2d 90, 96 (Tex. App.—Texarkana 1997, pet denied). "'Cause in fact' is an act or omission that was a substantial factor in bringing about the injury, and without it, harm would not have occurred." *Id.* "[M]erely creating the condition that makes harm possible falls short as a matter of law of satisfying the substantial factor test." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 800 (Tex. 2004). "'Foreseeability' means that the actor, as a person of ordinary intelligence and prudence, should have anticipated the dangers that his negligent act created for others." *Hall*, 957 S.W.2d at 96. Once a defendant presents evidence of a superseding cause, "[t]he burden then shifts to the plaintiff to raise a fact issue by presenting controverting evidence" that the intervening conduct was foreseeable. *Phan Son Van v. Peña*, 990 S.W.2d 751, 754 (Tex. 1999).

By its ruling, the trial court necessarily found that cause-in-fact was not established, Christus conclusively established that Urbina's conduct was an intervening superseding cause of William's injuries, the harm was not foreseeable to Christus, and Christus merely created the condition that made the harm possible. The Curtises' appellate brief does not address the trial

---

[4]"The appellant's brief 'must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.'" *In re Estate of Taylor*, 305 S.W.3d 829, 836 (Tex. App.—Texarkana 2010, no pet.) (quoting Tex. R. App. P. 38.1(i)). "This requirement is not satisfied by merely uttering brief, conclusory statements unsupported by legal citations." *Id.*

court's ruling on but-for causation, intervening superseding cause, or whether Urbina's neck maneuver and Curtis' injuries were foreseeable to Christus.[5] *See Stanfield v. Neubaum*, 494 S.W.3d 90, 102 (Tex. 2016) (citing *Phan Son Van*, 990 S.W.2d at 754).

In response to Christus' argument that the Curtises forfeited any error in the trial court's directed verdict by neglecting to address proximate cause in their opening brief, the Curtises have filed a rely brief attempting to alleviate the deficiencies. "[T]his argument comes too late, and we do not consider it." *Tijerina v. Wysong*, No. 14-15-00188-CV, 2017 WL 506779, at *4 (Tex. App.—Houston [14th Dist.] Feb. 7, 2017, no pet.) (mem. op.); *see* TEX. R. APP. P. 38.1(f), 38.3; *Bray v. Fenves*, No. 06-15-00075-CV, 2016 WL 3083539, at *5 (Tex. App.—Texarkana Mar. 24, 2016, pet. denied) (mem. op.). This is because "[a]n appellant is not permitted to raise an issue in a reply brief that was not included in the original brief." *In re Marriage of Bills*, No. 06-14-00056-CV, 2014 WL 5585778, at *3 n.5 (Tex. App.—Texarkana Nov. 4, 2014, no pet.) (mem. op.) (citing *Tipps v. Chinn Expl. Co.*, No. 06-13-00033-CV, 2014 WL 4377813, at *4 (Tex. App.—Texarkana 2014, no pet.) (mem. op.)).

---

[5]The terms "intervening superseding cause" and "foreseeability" appear nowhere in the Curtises' opening brief. It states that "'contraindicated vigorous neck maneuvers' by a non-specialist . . . caused the injury" and recites Malik's testimony that Urbina's conduct fell below the neurologist standard of care to cause William's injuries. Instead of showing how Christus' negligence did anything other than create the condition that made the harm possible, the Curtises' brief actually supported the trial court's findings on but-for cause and intervening superseding cause.

In their reply brief, the Curtises argue that their conclusory mention of the phrase "proximate cause" in the opening brief saves them from waiver. However, their recitation of evidence that Urbina caused William's injury does not save them from waiver of the issues of whether (1) the trial court erred in finding they did not bring sufficient evidence at trial that Christus' actions were a substantial factor in bringing about William's injury, (2) the trial court erred in finding Urbina's conduct was an intervening superseding cause, and (3) they presented any evidence that William's injuries were foreseeable to Christus.

8

Because the Curtises failed to challenge all grounds of the trial court's directed verdict in their opening brief, they forfeited their point of error complaining of the trial court's directed verdict.

We affirm the trial court's judgment.[6]


Josh R. Morriss, III
Chief Justice


DISSENTING OPINION

For more than a century, the Texas Supreme Court has advised appellate courts to give appellate rules "a reasonable and practical construction, and not one calculated to embarrass suitors in the appellate tribunal by unnecessary restrictions." *Clarendon Land Inv. Agency v. McClelland Bros.*, 23 S.W. 1100, 1103 (Tex. 1893) (on rehearing). We should favor any "arguable interpretation" of the rules that would support a merits disposition. *Ryland Enter. v. Weatherspoon*, 355 S.W.3d 664, 665 (Tex. 2011). For this reason, "disposing of appeals for harmless procedural defects is disfavored." *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012) (citing *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam); *Verburgt v.*

---

[6]By separate point of error, the Curtises also argue that the trial court erred in excluding evidence that Christus was negligent in relying on teleneurology. The trial court's ruling came after Christus argued that the petition never alleged that Christus was negligent for relying on teleneurology and there was no evidence that relying on teleneurology fell below the standard of care for Christus. The Curtises' expert, Malik, testified that Christus was not negligent to have a teleneurologist and, in the offer of proof submitted by the Curtises, stated that he was not "knocking teleneurology," which "was a good system for small, rural hospitals," but that "in-house neurology [wa]s a better option." Our ruling on the Curtises first point of error is dispositive.

*Dorner*, 959 S.W.2d 615, 616 (Tex. 1997)). Instead, "[a]ppellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver." *Id.* (quoting *Perry*, 272 S.W.3d at 587). Appellate courts must treat the statement of an issue "as covering every subsidiary question that is fairly included." TEX. R. APP. P. 38.1(f). Because the majority opinion fails to apply these principles in resolving this appeal based on briefing waiver, I respectfully dissent.

"[I]t is our practice to construe liberally points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants." *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). Yet, the majority opinion finds that the Curtises' brief fails to adequately address the trial court's directed verdict on the element of proximate cause. I disagree. Under the heading "The Record Contains Legally Sufficient Proof That Christus St. Michael Acted Negligently and Proximately Caused Bill Curtis's Brain Injury," the brief states:

> The Curtises' theory of the case against Christus St. Michael was that the hospital was negligent "in that it failed to have on-site neurology services while simultaneously touting its certified primary stroke program without disclosing the lack of on-site neurology." This theory encompassed claims of both medical negligence on the part of the hospital and negligent misrepresentation, each of which was a proximate cause of Bill Curtis's brain injury. The hospital's negligence in failing to have a neurologist present proximately caused Bill Curtis's brain injury because had a neurologist been present, he or she would have provided "timely indicated treatment" rather than the "contraindicated vigorous neck maneuvers" by a nonspecialist that caused the injury. Additionally, the Curtises alleged, "[b]ut for the misleading advertising, Mr. Curtis would have been at Wadley [Regional Medical Center] under the care of a board-certified neurologist who was physically present and who would have performed a careful and thorough neurologically focused physical examination. The Dix Hallpike and Epley maneuvers would never have been performed on Mr. Curtis and he would not have been injured."

10

(record citations omitted). A fair and liberal reading of the Curtises' brief shows that, although they could have presented more cogent arguments and better citations, their briefing was not so poor that their arguments related to proximate cause are unintelligible or unworthy of merits review.

Moreover, we should not affirm a judgment based on a waiver or forfeiture by an appellant when the appellee has, in effect, waived the basis on which we are affirming. Here, I do not believe Christus asserted that the general subject of proximate cause was waived. Instead, they challenged only whether the Curtises' brief waived the issues of intervening superseding cause for both of their negligence claims and cause-in-fact on their advertising claim. In its reply brief, the Curtises explained that they did not waive proximate cause because the general subject of proximate cause was raised in its opening brief and intervening superseding cause is a subsidiary issue that is simply one element to consider when determining proximate cause. Therefore, I believe that the Curtises correctly argued that the trial court's ruling on intervening superseding cause was not an independent ground for its directed verdict and was not required to be discussed in their opening brief.

11

Rather than choosing to narrowly read the Curtises' opening brief, I would address the merits of the argument they fully addressed in their reply brief. For this reason, I respectfully dissent.


Jack Carter
Justice

Date Submitted:     August 8, 2019
Date Decided:       August 30, 2019