COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO.  2-09-265-CV

 

 


 
 
 DON NORRIS AND AVERY AIR CONDITIONING/HEATING
 AND A-ABAC SERVICES, INC.
 
 
  
 
 
 APPELLANTS
 
 


                                                                                                                             

V.

 


 
 
 SHELBY JACKSON
 
 
  
 
 
 
 
 APPELLEE
 
 


 

                                                                                                                             

------------

 

FROM COUNTY COURT
 AT LAW NO. 2 OF DENTON COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I. Introduction

          Following a bench trial, the trial
court entered judgment against Appellants Don Norris and Avery Air
Conditioning/Heating and A-ABAC Services, Inc. (Avery) and in favor of Appellee
Shelby Jackson.  In six issues, Norris
and Avery (collectively, Appellants) contend that the evidence is legally and
factually insufficient to establish that Avery violated the Texas Deceptive
Trade Practices Act (DTPA),[2]
that Jackson suffered $500 in economic damages, that Norris committed an
unconscionable act, that Jackson suffered $2,500 in mental anguish damages,
that Jackson is entitled to treble damages or attorney’s fees, and that
Jackson’s attorney’s fees are reasonable. 
We affirm.

II. Background

          In response to Avery’s television,
radio, and printed advertisements, Jackson contacted Avery to purchase a new
air conditioner and furnace.  Avery
employee Wayne Settles met with Jackson at her home on March 13, 2007.  Among other things, Settles told Jackson that
she would receive a $500 tax certificate from Avery within two weeks,[3] a ten-year
warranty on parts and labor, a lifetime warranty on the compressor and heat
exchange, and utility bill savings over three to four years that would equal
the purchase price of the air conditioner and furnace.  On March 29, 2007, Jackson signed a Proposal
and Agreement (the Agreement) to pay $8,500 for the replacement and
installation of a new heating and air conditioning unit, which would include
insulation, wind turbines, new duct work, and a thermostat.[4]  Jackson testified that she relied on Settles’s
representations concerning the $500 tax certificate, the warranties, and cost
recoupment within three to four years when deciding to enter into the Agreement.


          Avery employees began installation of
the air conditioning and heating unit on March 30, 2007.  Jackson had the installation stopped, though,
because the workers did not bring new ductwork to install; the workers also damaged
a door frame and an antique grandfather clock in Jackson’s home.  Jackson then spoke with Norris, another Avery
employee.  Norris attempted to have Jackson
abandon the ductwork replacement because he did not believe it was necessary, but
he eventually told Jackson that the ductwork would be installed the next day.
Jackson also spoke with Avery employee Chris Busby, who represented in writing
that Avery would complete an airflow test and install the ductwork and wind
turbines the next day.  Jackson testified
that she would have canceled the Agreement on March 30, 2007, but for Norris’s
and Busby’s representations. 

          Avery employees, including Busby,
returned to complete the installation on March 31, 2007, but they did not
perform the airflow test, install the ductwork, or place the wind turbines
where Jackson had instructed they be installed (even though it was possible to
do so).  As a result, Jackson initially
refused to sign the completion certificate, and Avery employee Larry Clark
called Norris.  Jackson testified that while
Clark was speaking with Norris by telephone, Clark told her that Norris had
authorized a reduction in the contract price from $8,500 to $7,500 to cover the
uninstalled ductwork and the damage to the door frame and grandfather
clock.  According to Jackson, Clark told
her that if she signed the completion certificate and a new charge slip for $7,500,
doing so would modify the Agreement; he also said that Avery would accept the
modification.[5]  Jackson testified that Clark also told her
that she would continue to have all benefits of the Agreement, other than the
three items included in the price reduction. 
Jackson testified that she relied on Clark’s representations in deciding
to sign the completion certificate and the $7,500 charge slip.  That same day, Jackson paid $7,500 to Avery.  Contrary to Jackson’s testimony, Clark
testified that the charge slip was not a modification of the contract but was
instead an agreement by Avery to allow Jackson to hold the $1,000 until Avery
could repair the damage to the door frame and grandfather clock. 

          Jackson did not receive the $500 tax
certificate from Avery, despite her repeated calls to Avery requesting the
certificate.  On June 22, 2007, responding
to Jackson’s inquiries concerning the tax certificate, Norris called Jackson
and told her that she still owed Avery $1,000. 
During the call, Norris called Jackson a crook and a thief, and he told
her that she would not get away with taking $1,000 from Avery, that he would
put a lien on her house, and that he would take away her warranty.  Norris admitted to Jackson that he knew on
June 22 about Jackson’s conversation with Clark on March 31 and that he had
told Clark to take off the $1,000 from the contract price, but he told her that
he intended to collect it later.  Norris
confirmed the substance of his June 22 conversation with Jackson to Jackson’s
ex-husband; he told William that Jackson was a thief and had committed
extortion, that “this has happened before with many customers,” that he would
take Jackson to court, and that he had never lost a case.  Contrary to the testimony by Jackson and William,
Norris testified that he did not call Jackson a crook or a thief and that he
did not threaten to put a lien on her house.[6]  

          Jackson offered evidence of her
economic damages relating to the system’s airflow, problems with the wind
turbines that were not resolved by Avery, the system not paying for itself in
three to four years, and Avery’s failure to provide the $500 tax
certificate.  Jackson also presented
evidence of her mental anguish.  She
testified, among other things, that during and after the June 22 call from
Norris, her blood pressure went up to 180 from her normal range in the 120s,
that her blood pressure remained between 140 and 160 after the call, and that she
confirmed her blood pressure readings with her blood pressure monitor. She
testified that she believed Norris’s threats, that she was “scared to death,”
that his “bully talking” made her feel very intimidated and nervous, and that
she could not sleep because of her fear and anxiety that Norris would put a
lien on her house. 

          In its findings of fact and
conclusions of law, the trial court found that Jackson and Avery had modified
the Agreement to reduce the purchase price of the air conditioner and furnace
by $1,000; that Avery violated the DTPA by representing that the Agreement
conferred or involved rights, remedies, or obligations it did not have or
involve and by failing to disclose information with the intent to induce
Jackson into the transaction; that Avery’s DTPA violations caused Jackson to
suffer $500 in economic damages; that Avery’s DTPA violations were committed
knowingly; that Jackson’s $500 in economic damages should be trebled; and that
Jackson should recover $4,000 in attorney’s fees from Avery.  The trial court also found that Norris
violated the DTPA by engaging in an unconscionable action or course of conduct;
that Norris’s DTPA violation caused Jackson to suffer $2,500 in mental anguish
damages; that Norris’s DTPA violation was committed intentionally; that
Jackson’s $2,500 mental anguish damages should be trebled; and that Jackson
should recover $16,000 in attorney’s fees from Norris.  On July 8, 2009, the trial court signed an
amended final judgment in accordance with its findings of fact and conclusions
of law.[7]  

 

 

III. Standards of Review

Findings
of fact entered in a case tried to the court have the same force and dignity as
a jury’s answers to jury questions.  Anderson v. City of Seven Points, 806
S.W.2d 791, 794 (Tex. 1991).  The trial
court’s findings of fact are reviewable for legal and factual sufficiency of
the evidence to support them by the same standards that are applied in
reviewing evidence supporting a jury’s answer. 
Ortiz v. Jones, 917 S.W.2d
770, 772 (Tex. 1996); Catalina v. Blasdel,
881 S.W.2d 295, 297 (Tex. 1994).  Conclusions
of law may not be challenged for factual sufficiency, but they may be reviewed
to determine their correctness based upon the facts.  AMX
Enters., L.L.P. v. Master Realty Corp., 283 S.W.3d 506, 519 (Tex. App.—Fort
Worth 2009, no pet.) (op. on reh’g); Dominey
v. Unknown Heirs & Legal Representatives of Lokomski, 172 S.W.3d 67, 71
(Tex. App.—Fort Worth 2005, no pet.).

          We may sustain a legal sufficiency
challenge only when (1) the record discloses a complete absence of evidence of
a vital fact; (2) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact; (3) the
evidence offered to prove a vital fact is no more than a mere scintilla; or (4)
the evidence establishes conclusively the opposite of a vital fact.  Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, “No Evidence” and
“Insufficient Evidence” Points of Error, 38 Tex. L. Rev. 361, 362–63
(1960).  In determining whether there is
legally sufficient evidence to support the finding under review, we must
consider evidence favorable to the finding if a reasonable factfinder could and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.  Cent.
Ready Mix Concrete Co. v. Islas, 228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson, 168 S.W.3d
802, 807, 827 (Tex. 2005).

When
reviewing an assertion that the evidence is factually insufficient to support a
finding, we set aside the finding only if, after considering and weighing all
of the evidence in the record pertinent to that finding, we determine that the
evidence supporting the finding is so weak, or so contrary to the overwhelming
weight of all the evidence, that the answer should be set aside and a new trial
ordered.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986) (op. on
reh’g); Garza v. Alviar, 395 S.W.2d
821, 823 (Tex. 1965); In re King’s Estate,
150 Tex. 662, 244 S.W.2d 660, 661 (1951).         

IV. DTPA Violations vs. Breach of
Contract

          In their first issue, Appellants
contend there is legally and factually insufficient evidence to establish that
Avery violated the DTPA because the representations Avery made to Jackson
became part of the contract between the parties and because any failure to
satisfy those representations is a breach of contract, not a violation of the
DTPA. 

Under
the DTPA, a consumer may recover damages incurred as a result of another’s
false, misleading, or deceptive acts or practices.  See
Tex. Bus. & Com. Code Ann. § 17.50(a)(1).  However, mere breach of contract, without
more, does not violate the DTPA.  Formosa Plastics Corp. USA v. Presidio Eng’rs
& Contractors, Inc., 960 S.W.2d 41, 46 (Tex. 1998).  But when representations are made outside the
contract, a violation of the DTPA may occur.  Cont’l
Dredging, Inc. v. De-Kaizered, Inc., 120 S.W.3d 380, 390 (Tex. App.—Texarkana
2003, pet. denied).  Whether a breach of
contract rises to the level of a misrepresentation sufficient to trigger the
DTPA is a fact driven inquiry that, once the facts are ascertained, is a
question of law.  Id. at 389.  When a
representation by a defendant causes no harm itself, but instead the injury or
damage was caused by the breach of contract, that injury is governed by
contract law, not the DTPA.  See Crawford v. Ace Sign, Inc., 917
S.W.2d 12, 14–15 (Tex. 1996).  

In
Tony Gullo Motors I, L.P. v. Chapa,
the plaintiff alleged that the defendant promised her one vehicle model,
delivered another, and had no intention of delivering the model it initially
promised.  212 S.W.3d 299, 304–05 (Tex.
2006).  The supreme court stated, “[W]hile
the failure to deliver a Highlander Limited would not alone violate the DTPA,
Chapa’s claim was that Gullo Motors represented she would get one model when in
fact she was going to get another.”  Id. 
The court held, “While failure to comply would violate only the
contract, the initial misrepresentation violates the DTPA.”  Id.
(citing Tex. Bus. & Com. Code Ann. § 17.46(b)(7), (24)).  

Avery’s
actions in this case were more than mere breaches of the parties’
contract.  The trial court found that
Avery violated the DTPA by representing that the Agreement conferred or
involved rights, remedies, or obligations it did not have or involve and by
failing to disclose information with the intent to induce Jackson into the
transaction.  In that regard, Jackson
presented evidence that Avery represented, through Sellers, that Avery would
provide Jackson with a $500 tax certificate, that the representation concerning
the $500 tax certificate is not a stated term of the Agreement, that Jackson
relied on the representation when deciding to enter into the Agreement with
Avery, that Avery did not provide Jackson with a $500 tax certificate, and that
Avery does not provide tax certificates to any of its customers.  This evidence was sufficient for the trial
court to find that Avery represented that it would deliver a $500 tax
certificate but had no intention of doing so. 
In addition, Jackson presented evidence that Avery agreed to permanently
reduce the contract price by $1,000 but later threatened legal action and
counterclaimed against Jackson for the $1,000. 
Thus, the trial court had before it additional evidence sufficient to
find that Avery failed to disclose its intent to later collect the $1,000 to
induce Jackson into continuing the transaction. 
The evidence supports the trial court’s findings that Avery represented
that the Agreement conferred or involved rights, remedies, or obligations it
did not have or involve and failed to disclose information with the intent to
induce Jackson into the transaction.  

Relying
on Crawford, 917 S.W.2d at 14, Mays v. Pierce, 203 S.W.3d 564, 575 (Tex. App.—Houston
[14th Dist.] 2006, pet. denied), and Head
v. U.S. Inspect DFW, Inc., 159 S.W.3d 731, 743 (Tex. App.—Fort Worth 2005,
no pet.), Appellants argue that Jackson’s damages were caused by Avery’s
failure to perform the parties’ contract and not by any representations in
violation of the DTPA.  But each of the
cited cases is distinguishable.  In Crawford, the defendants represented
that the plaintiff’s business would grow at least seventy to eighty percent in
one year by placement of a yellow pages ad, the parties contracted for the
placement of an ad in the yellow pages, but the ad did not appear in the yellow
pages as promised.  See 917 S.W.2d at 12–13.  The
supreme court held that the defendants’ statements “were nothing more than
representations that the defendants would fulfill their contractual duty to
publish.”  Id. at 14.  There was no
allegation in Crawford that the
defendants never intended to perform their contractual obligations.  See id.
at 12–15. In Mays, the alleged
misrepresentations were terms of the parties’ contract and the defendant’s bids
after the parties entered into the contract. 
See 203 S.W.3d at 575.  The Mays
court held that because there was legally insufficient evidence that the
defendant never intended to perform its contract, the plaintiff’s allegations
did not rise above a breach of contract claim. 
Id.  And in Head,
the plaintiff’s complaint related to an explicit term of the parties’
agreement—that a licensed real estate inspector would perform the
inspection.  See 159 S.W.3d at 742–43. 
Here, Jackson presented evidence of representations that Avery never
intended to satisfy and that were outside the terms of the Agreement: that
Avery would provide Jackson with a $500 tax certificate and that Avery would
reduce the contract price by $1,000. 

          Appellants also argue that the trial
court found that all of Avery’s representations became part of the Agreement
and that, therefore, any failure to satisfy those representations was a breach
of contract.  But Appellants ignore the
evidence that Avery never intended to comply with its representations.  Thus, even if Avery’s representations about
the $500 tax certificate and $1,000 reduction in price became part of the Agreement,[8]
the trial court heard evidence that Avery never intended to provide a $500 tax
certificate or reduce the contract price by $1,000.  The initial representations without the
intent to perform violate the DTPA.  See Tony Gullo Motors, 212 S.W.3d at
305.

          After reviewing all of the evidence in
the light favorable to the trial court’s finding, crediting favorable evidence
if a reasonable factfinder could, and disregarding contrary evidence unless a
reasonable factfinder could not, we hold that there is legally sufficient
evidence to support the trial court’s finding that Avery’s conduct was
actionable under the DTPA.  Likewise,
after considering and weighing all of the evidence pertinent to the trial
court’s finding, we cannot say that the evidence supporting the trial court’s
finding is so weak or contrary to the overwhelming weight of all the evidence
that it should be set aside and a new trial ordered.  We overrule Appellants’ first issue.

 

V. Economic Damages

          Appellants contend in their second
issue that the evidence is legally and factually insufficient to support the
trial court’s finding that Jackson suffered $500 in economic damages as a
result of Avery’s DTPA violation.  Specifically, Appellants argue that Jackson
presented no evidence of damages that were not subsumed within the $1,000
reduction in the Agreement price.  

          As the trier of fact, the trial court
determines the credibility of the witnesses and the weight to be given their
testimony, and we may not substitute our judgment for that of the fact finder
simply because we may disagree with the fact finder’s conclusions.  Pool,
715 S.W.2d at 635.  Because they can
observe a witness’s demeanor, trial courts are given great latitude as fact
finders to believe or disbelieve a witness’s testimony, particularly when the
witness is interested in the outcome.  In re Doe 4, 19 S.W.3d 322, 325 (Tex. 2000).
 Moreover, the trial court can reject the
uncontroverted testimony of an interested witness unless the testimony is
readily controvertible, clear, positive, and direct and there are no
circumstances that tend to discredit or impeach the testimony.  Id.;
Lofton v. Texas Brine Corp., 777
S.W.2d 384, 386 (Tex. 1989).

          Jackson presented evidence that Avery
did not provide the $500 tax certificate, that she would not recoup the cost of
the new air conditioner and furnace in three to four years through reduced
utility bills, and that the $1000 contract price reduction related only to the
damage to the door frame and grandfather clock and failure to install new
ductwork.  She also presented evidence
that she spent approximately $300 repairing the air flow and $600 having the
wind turbines moved to different locations.  Thus, the trial court’s finding of $500 in
economic damages is within the range of evidence Jackson presented at
trial.  See Gulf States Util. Co. v. Low, 79 S.W.3d 561, 566 (Tex. 2002)
(stating that the fact finder “has discretion to award damages within the range
of evidence presented at trial”).  

Appellants
contend that the trial court could not have based the economic damage award on
the failure to deliver the tax certificate because Jackson did not rebut
Norris’s testimony that a tax certificate is not required to claim a tax credit
and that Jackson only needed her contract to claim the tax credit.  But the trial court alone determines the
weight and credibility of the testimony and could have validly disregarded Norris’s
testimony.[9]  See In
re Doe 4, 19 S.W.3d at 325; Lofton,
777 S.W.2d at 386.  Furthermore, without
considering the $500 tax certificate, the trial court could have found $500 in
economic damages by accepting some, but not all, of the evidence that Jackson
spent $900 repairing the air flow and moving the wind turbines and that the new
air conditioner and furnace did not sufficiently lower Jackson’s utility bills
for her to recoup the cost of the system in three to four years.  See
State Farm Fire & Cas. Co. v. Rodriguez, 88 S.W.3d 313, 321 (Tex.
App.—San Antonio 2002, pet. denied) (“It is fundamental that a jury may blend
the evidence admitted before it and believe all, some or none of a witness’s
testimony.”), abrogated on other grounds
by Don’s Bldg. Supply, Inc. v.
OneBeacon Ins. Co., 267 S.W.3d 20, 27 (Tex. 2008).  

          After reviewing all of the evidence in
the light favorable to the trial court’s finding, crediting favorable evidence
if a reasonable factfinder could, and disregarding contrary evidence unless a
reasonable factfinder could not, we hold that there is legally sufficient
evidence to support the trial court’s finding that Jackson suffered $500 in
economic damages as a result of Avery’s DTPA violation.  Likewise, after considering and weighing all
of the evidence pertinent to the trial court’s finding, we cannot say that the
evidence supporting the trial court’s finding is so weak or contrary to the
overwhelming weight of all the evidence that it should be set aside and a new
trial ordered.  We overrule Appellants’
second issue. 

VI. Norris’s Unconscionable Act

          Appellants argue in their third issue
that the evidence is legally and factually insufficient to support the trial
court’s finding that Norris committed an unconscionable act. 

          The DTPA defines an unconscionable
action or course of action as “an act or practice which, to a consumer’s
detriment, takes advantage of the lack of knowledge, ability, experience, or
capacity of the consumer to a grossly unfair degree.”  Tex. Bus. & Com. Code Ann. § 17.45(5).  To prove an unconscionable action or course of
action, Jackson was required to show that Norris took advantage of her lack of
knowledge and that the resulting unfairness was glaringly noticeable, flagrant,
complete, and unmitigated.  See Bradford v. Vento, 48 S.W.3d 749,
760 (Tex. 2001); Bennett v. Bank United,
114 S.W.3d 75, 82 (Tex. App.—Austin 2003, no pet.).  The relevant inquiry examines the entire
transaction, not Norris’s intent.  Chastain v. Koonce, 700 S.W.2d 579, 583
(Tex.1985); Cooper v. Lyon Fin. Servs.,
Inc., 65 S.W.3d 197, 207 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  “Section 17.45(5) is intended to be an
objective standard.”  Chastain, 700 S.W.2d at 583.

          Jackson presented evidence that Norris
(1) insulted and falsely accused Jackson of criminal and fraudulent conduct;
(2) repeated his accusations to William; (3) told Jackson that he would cancel
her lifetime warranty under the Agreement; (4) told Jackson that he would place
a lien on her residence; (5) told Jackson that he would “take her to court” and
that “Avery has never lost a case”; (6) told William that he would charge
Jackson’s credit card for the additional $1,000 under the Agreement; and (7)
admitted to William that he and Avery never intended to honor the $1,000
modification of the Agreement.  Norris is
Avery’s general manager, and Jackson is a retired, single, elderly woman with
no college degree.  Jackson testified
that she believed Norris’s threats and suffered physical manifestations of
mental anguish; she also relied on Norris’s agreement to reduce the Agreement
price by $1,000.  This evidence is
sufficient to prove that Norris took advantage of Jackson’s lack of knowledge
and that the resulting unfairness was glaringly noticeable, flagrant, complete,
and unmitigated.  See Bradford, 48 S.W.3d at 760; Bennett,
114 S.W.3d at 82.  

The
evidence is also sufficient to prove that Norris acted intentionally.  “Intentionally” is defined by the DTPA to
mean “actual awareness of the falsity, deception, or unfairness of the act or
practice” together “with the specific intent that the consumer act in
detrimental reliance on the falsity or deception.”  See
Tex. Bus. & Com. Code Ann. § 17.45(13). 
Section 17.45(13) further provides that intent “may be inferred from
objective manifestations that indicate that the person acted
intentionally.”  Id.  Norris, through Clark,
told Jackson that the Agreement price would be reduced by $1,000 if she signed
the completion certificate and the charge slip. 
But Norris told William that he never intended to honor the $1,000
modification, and in the June 22 telephone call, Norris threatened Jackson and
accused her of criminal conduct while trying to collect the additional
$1,000.  

          Relying on Chastain, Appellants argue that Norris’s conduct during the June 22
telephone call with Jackson cannot support the trial court’s finding because
the conduct occurred several months after the original transaction.  See
700 S.W.2d at 584.  In Chastain, the purchasers of five rural
homesteads sued vendors for threats made over the telephone and alleged
unconscionable action in violation of the DTPA.  Id.
at 580.  But the court held that “[t]he
phone conversation occurred approximately one year after the alleged misrepresentations
occurred and [did] not reflect on the unfairness of the original transaction.”  Id.  Here, Norris spoke with Jackson on June 22
because Jackson had called to inquire about the $500 tax certificate she had
not yet received.  Thus, Norris’s unconscionable
conduct occurred during the course of the transaction between Jackson and
Avery.  See Houston Livestock Show & Rodeo, Inc. v. Hamrick, 125 S.W.3d
555, 575–76 (Tex. App.—Austin 2003, no pet.) (distinguishing Chastain and holding that the unconscionable
actions occurred during the course of the transaction because they occurred
before the defendant had made payment to the consumers).

After
reviewing all of the evidence in the light favorable to the trial court’s
findings, crediting favorable evidence if a reasonable factfinder could, and
disregarding contrary evidence unless a reasonable factfinder could not, we
hold that there is legally sufficient evidence to support the trial court’s
findings that Norris committed an unconscionable act and acted intentionally.  Likewise, after considering and weighing all
of the evidence pertinent to the trial court’s findings, we cannot say that the
evidence supporting the trial court’s findings is so weak or contrary to the
overwhelming weight of all the evidence that they should be set aside and a new
trial ordered.  We overrule Appellants’
third issue.

VII. Mental Anguish Damages

          Appellants contend in their fourth
issue that the evidence is legally and factually insufficient to support the
trial court’s finding that Jackson is entitled to mental anguish damages.  They argue that the evidence does not reveal
mental anguish severe enough to warrant monetary recovery or a basis for $2,500
in mental anguish damages. 

          Section 17.50(b)(1) of the Texas
Business and Commerce Code allows the award of mental anguish damages on a DTPA
claim if the trier of fact finds that the conduct of the defendant was
committed “intentionally.”  Tex. Bus.
& Com. Code Ann. § 17.50(b)(1).  To
recover mental anguish damages under the DTPA, the plaintiff must present
“direct evidence of the nature, duration, and severity of [the] mental anguish,
thus establishing a substantial disruption in the [plaintiff's] daily routine.”  Latham
v. Castillo, 972 S.W.2d 66, 69–70 (Tex. 1998); see Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995); Anderson v. Long, 118 S.W.3d 806, 811
(Tex. App.—Fort Worth 2003, no pet.).  Proof
of a physical manifestation of mental anguish is not required.  City of
Tyler v. Likes, 962 S.W.2d 489, 495 (Tex. 1997); Parkway, 901 S.W.2d at 443.  But a plaintiff's own testimony of extreme
fright, constant worry, extreme apprehension, extreme embarrassment,
nervousness on a daily basis, and loss of sleep does not, without more, present
more than a scintilla of evidence to support an award of mental anguish
damages.  Anderson, 118 S.W.3d at 811 (citing Latham, 972 S.W.2d at 69–70).

          Jackson testified that she is seventy
years old and receives no financial support from her children, former husband,
or anyone else; that she has a limited income, lives on a budget, and has to be
frugal; that her blood pressure had stayed in the 120s before the June 22
telephone call with Norris; that her blood pressure went up to 180 during and immediately
after the telephone call with Norris and was staying “way over 140, 160
usually” since the call; that there were no factors other than Appellants’
actions that caused her high blood pressure; that she believed Norris’s
threats; that she previously had no trouble sleeping but could not sleep after
the telephone call because of her fear that a lien would be placed on her
house; that Norris’s “bully talking” made her feel very intimidated, nervous,
and “very scared”; that she is no longer the content and happy person she was
before the telephone call; and that she is tired from the stress, is worried,
is not as energetic, and is irritable with her grandchildren.  William testified that Jackson was very upset
and frightened immediately after the telephone call with Norris; that he
personally observed how Norris’s conduct affected Jackson; that Jackson
constantly worried about the situation and was “really, really upset”; that she
is now irritable with her grandchildren to the point where he thought other
arrangements for their care should be made for Jackson’s sake; that Jackson
called him late at night, when she was normally asleep, to talk about what
happened; that Jackson’s health had gone downhill a lot since the telephone
call; and that Jackson was normally a very organized person but had lost
control since the telephone call.  This
evidence constitutes “‘direct evidence of the nature, duration, and severity of
[Jackson’s] mental anguish,’ and established ‘a substantial disruption in
[Jackson’s] daily routine.’”  CA Partners v. Spears, 274 S.W.3d 51, 78
(Tex. App.—Houston [14th Dist.] 2008, pet. denied) (quoting Parkway, 901 S.W.2d at 444, and holding
that the plaintiff presented legally and factually sufficient evidence of
mental anguish damages).

          Citing Gunn Infiniti, Inc. v. O’Byrne, 996 S.W.2d 854, 861 (Tex. 1999),
Appellants contend that Jackson was required to prove that “Norris’s DTPA
violation was the sole proximate cause of her mental anguish, not Avery or some
other cause.”  First, the causation
standard in DTPA cases is producing cause, not proximate cause.  See
Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd., 896 S.W.2d 156, 160–61
(Tex. 1995).  Second, Jackson’s evidence
relates to her mental anguish following the June 22 telephone call with Norris,
not the issues she had with Avery concerning the actual installation of the air
conditioner and furnace.  Thus, Jackson
presented sufficient evidence that Norris’s conduct during the June 22
telephone call was the producing cause of her mental anguish damages.  See
Doe v. Boys Club, Inc., 907 S.W.2d
472, 481 (Tex. 1995) (defining producing cause in context of a DTPA
misrepresentation claim to be “a substantial factor which brings about the
injury and without which the injury would not have occurred.”); see also Ford Motor Co. v. Ledesma, 242
S.W.3d 32, 46 (Tex. 2007) (defining producing cause in product liability case
to be “a substantial factor in bringing about an injury, and without which the
injury would not have occurred”).

          Appellants also argue that Jackson
offered insufficient evidence to support the $2,500 in mental anguish damages
found by the trial court.  They argue
that “the trial court just picked the number $2,500 out of the blue” and “did
not incorporate a finding that the $2,500 would fairly and reasonably
compensate Jackson for her mental anguish.” 
In Saenz v. Fidelity & Guaranty
Insurance Underwriters, our supreme court held that there must be evidence
that the amount of damages awarded by the jury for mental anguish was fair and
reasonable.  See 925 S.W.2d 607, 614 (Tex. 1996).  But the court acknowledged that such
determination is often difficult:

There must be
evidence that the amount found is fair and reasonable compensation, just as
there must be evidence to support any other jury finding. Reasonable
compensation is no easier to determine than reasonable behavior—often it may be
harder—but the law requires factfinders to determine both. And the law requires
appellate courts to conduct a meaningful evidentiary review of those
determinations. 

 

Id.  

          In this case, the trial court was in
the best position to determine the weight and credibility of the testimony from
Jackson and William concerning the physical manifestations of Jackson’s mental
anguish and the disruption in her life. 
In addition, we note that although the trial court awarded all of the
$2,500 in mental anguish damages that Jackson requested, the trial court did
not award a majority of the other damages that Jackson sought.  See
Schindler Elevator Corp. v. Anderson, 78 S.W.3d 392, 415 (Tex. App.—Houston
[14th Dist.] 2001, pet. granted, judgm’t vacated w.r.m.) (reasoning that an
award of some damages and not others indicates the fact finder “measured
carefully” the damages issue).  Thus, it
appears from the record that the trial court did more than “simply pick a
number and put it in the blank.”  See Saenz, 925 S.W.2d at 614.  The evidence is sufficient to support the
trial court’s implied finding that $2,500 would fairly and reasonably
compensate Jackson for her mental anguish. 
See Pulley v. Milberger, 198
S.W.3d 418, 427 (Tex. App.—Dallas 2006, pet. denied) (“When the trial court’s
express findings of fact do not address all grounds for recovery or defenses,
an appellate court implies findings of fact regarding the omitted grounds or
defenses that are needed to support the judgment.”). 

After
reviewing all of the evidence in the light favorable to the trial court’s
findings, crediting favorable evidence if a reasonable factfinder could, and
disregarding contrary evidence unless a reasonable factfinder could not, we
hold that there is legally sufficient evidence to support the trial court’s
finding that Jackson should recover $2,500 in mental anguish damages and the
trial court’s implied finding that $2,500 would fairly and reasonably compensate
Jackson for her mental anguish. 
Likewise, after considering and weighing all of the evidence pertinent
to the trial court’s findings, we cannot say that the evidence supporting the
trial court’s findings is so weak or contrary to the overwhelming weight of all
the evidence that they should be set aside and a new trial ordered.  We overrule Appellants’ fourth issue.

VIII. Treble Damages and
Attorney’s Fees

          Appellants argue in their fifth issue
that Jackson cannot recover treble damages or attorney’s fees because she did
not present sufficient evidence of economic or mental anguish damages.  However, because we overruled Appellants’
second and fourth issues concerning the sufficiency of the evidence to support
Jackson’s economic and mental anguish damages, we overrule Appellants’ fifth
issue.  See Tex. Bus. & Com. Code Ann. § 17.50(b)(1) (permitting a
consumer to recover up to three times the amount of economic damages for
intentional or knowing conduct); see also
id. § 17.50(d) (requiring mandatory award of reasonable and necessary
attorney’s fees to prevailing consumer in action under DTPA).

IX. Reasonableness of Attorney’s
Fees

          In their sixth issue, Appellants
contend the evidence is legally and factually insufficient to support the trial
court’s findings that Jackson should recover a total of $27,500 in attorney’s
fees.  

The
trial court awarded attorney’s fees to Jackson in the amount of $4,000 against
Avery and $16,000 against Norris.  The
trial court also awarded Jackson $7,500 in attorney’s fees against Appellants
in the event of an appeal to the court of appeals.  Relying solely on Smith v. Patrick W.Y. Tam Trust, 296 S.W.3d 545 (Tex. 2009),
Appellants contend that the trial court’s attorney’s fee awards are
unreasonable in light of the trial court’s actual damage awards of $500 against
Avery and $2,500 against Norris.  Once
trebled, the trial court’s actual damage awards total $9,000. 

In
Smith, the landlord sued the
guarantors of a shopping center lease for $215,391.50 in damages and sought
$47,438.75 in attorney’s fees.  Id. at 546.  The guarantors unsuccessfully objected to the
landlord’s attorney fee statements as hearsay but did not otherwise challenge
or contradict the landlord’s evidence of attorney’s fees.  Id.  The jury found the guarantors liable but
awarded only $65,000 in damages and no attorney’s fees.  Id.  The trial court entered judgment that the
landlord receive $65,000 in damages, but it rendered judgment notwithstanding
the jury’s verdict that the landlord recover $7,500 in attorney’s fees.  Id.
at 546–47.  The court of appeals vacated the
award of $7,500 in attorney’s fees, rendered judgment that the landlord recover
all of the $47,438.75 in attorney’s fees it proved at trial, and held that the
trial court abused its discretion by awarding only $7,500 in attorney’s fees
because the landlord presented uncontroverted evidence of its attorney’s
fees.  Id. at 547.  

The
supreme court held that the fee of $47,438.75, “though supported by
uncontradicted testimony, was unreasonable in light of the amount involved and
the results obtained, and in the absence
of evidence that such fees were warranted due to circumstances unique to this
case.”  Id. at 548 (emphasis added). 
The court held that the court of appeals erred by holding that the
landlord proved entitlement to the entire fee as a matter of law, but it also
stated that although the jury “could have rationally concluded that, in light
of the amount involved and the results obtained, a reasonable fee award was
less than the full amount sought, no evidence supported the jury’s refusal to
award any attorney’s fees.”  Id. 
The court continued, “On retrial,
the evidence may support a similar fee award, but that is a matter within the
jury’s purview.”  Id. (emphasis added). 

Smith
does not support Appellants’ contention that the attorney’s fees awarded to
Jackson are unreasonable solely
because they exceed the amount of actual damages awarded.  Rather, we must consider the evidence Jackson
presented to determine whether the attorney’s fees awarded are reasonable in
light of the factors set forth in rule 1.04 of the Texas Disciplinary Rules of
Professional Conduct, which include “the amount involved and the results
obtained” and the circumstances unique to this case.  See
Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex.
1997) (listing factors to consider in determining reasonableness of attorney’s
fee awards) (citing Tex. Disciplinary R. Prof. Conduct 1.04, reprinted in Tex.
Gov’t Code, tit. 2, subtit. G app. (State Bar Rules, art. X, § 9)); see also Smith, 296 S.W.3d at 548
(placing special emphasis on the factor concerning the amount involved and
results obtained).

Jackson’s
attorney, Carol Wolfram, testified that she has been licensed in Texas since
1984, that she has extensive experience as a trial attorney, that she has
practiced in North Texas and is familiar with trying cases in Denton County,
and that her billing rate of $275 per hour is within the usual and customary
range of hourly rates charged by attorneys with similar experience in the
area.  Ms. Wolfram also testified
concerning the work that she performed in the case on Jackson’s behalf, which
included drafting pleadings; drafting, reviewing, and responding to discovery
requests and responses; attending mediation; attending three depositions
noticed by Appellants and a hearing on Appellants’ motion for continuance;
preparing responses and attending a hearing on Appellants’ motion for summary
judgment; and preparing for and attending trial.  She testified that she adjusted her time
downward so that the actual fee invoices sent to Jackson do not reflect all of
the time she spent working on the case; she estimated that she reduced her
bills by fifteen to twenty percent.[10]  Ms. Wolfram testified that she segregated the
time spent solely on the fraud cause of action and that she has not charged for
that time.  Ms. Wolfram testified that,
based on her hourly rate of $275 per hour, $29,000 is a reasonable and
necessary fee for services rendered through trial and that $7,500 to $8,000 is
a reasonable fee for an appeal to the court of appeals.  Counsel for Appellants also testified
concerning the attorney’s fees incurred by his clients; he testified that a fee
award to his clients in the amount of $30,000 was reasonable for his clients’
$1,000 counterclaim against Jackson. 

Jackson,
through her attorney, presented evidence of the time and labor involved in
prosecuting the case on her behalf, the fee customarily charged in the locale
for similar legal services, her experience and ability to perform the legal
services, and the attorney’s fees made necessary due to Appellants’ litigation
strategy such as noticing three depositions and filing motions for continuance
and summary judgment.  See Arthur Andersen & Co., 945 S.W.2d at
818 (listing factors for determining reasonableness of attorney’s fee awards).
Indeed, Norris’s and Avery’s counsel testified that $30,000 was a reasonable
fee for the services that he and his law firm rendered in the case in
attempting to recover on Avery’s $1,000 counterclaim.  Considering the evidence in light of the
factors set forth in rule 1.04, we hold that this evidence is sufficient to
support the trial court’s award of $27,500 in attorney’s fees to Jackson, even
though the attorney’s fees exceed the actual damage awards.  See
Bank of Tex. v. VR Elec., Inc., 276 S.W.3d 671, 685 (Tex. App.—Houston [1st
Dist.] 2008, pet. denied) (affirming $30,000 attorney fee award in case
involving $7,035.26 in actual damages); Cordova
v. Sw. Bell Yellow Pages, Inc., 148 S.W.3d 441, 445–49 (Tex. App.—El Paso
2004, no pet.) (affirming fee award of $18,007 in case involving $7,092.18 in
actual damages).  

After
reviewing all of the evidence in the light favorable to the trial court’s
findings, crediting favorable evidence if a reasonable factfinder could, and
disregarding contrary evidence unless a reasonable factfinder could not, we
hold that there is legally sufficient evidence to support the trial court’s
findings that Jackson should recover a total of $27,500 in attorney’s fees from
Appellants.  Likewise, after considering
and weighing all of the evidence pertinent to the trial court’s findings, we
cannot say that the evidence supporting the trial court’s findings is so weak
or contrary to the overwhelming weight of all the evidence that they should be
set aside and a new trial ordered.  We
overrule Appellants’ sixth issue.

 

X. 
Conclusion

Having
overruled each of Appellants’ six issues, we affirm the trial court’s judgment.

 

 

                                                                   
 
 
 
 
 
 
 
 
 ANNE GARDNER

                                                                   
 
 
 JUSTICE

 

PANEL:  
 
 
 
 
 
 
 GARDNER and 
 
 
 
 
 
 MEIER, JJ.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by
 Assignment).

 

DELIVERED:  October 28, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Bus. & Com. Code Ann. §§ 17.41 et seq.  (Vernon 2002 & Supp. 2010).





[3]One of Avery’s
print advertisements states, in part, “THE GOV’T WILL GIVE YOU $500 TO HELP!” 





[4]This was actually
the second contract between the parties; the first contract was for $8,200 and did
not provide for new duct work. 





[5]Clark repeated his
statements about the price reduction to William Jackson, Jackson’s ex-husband
(William).  William testified that he had
no doubt after speaking with Clark that the contract price had been permanently
reduced by $1,000. 





[6]On cross-examination,
Norris admitted that he pleaded guilty in 2007 to theft in the amount of
$77,500 and in 2006 to theft of a check for more than twenty but less than
$500. 





[7]In the amended final
judgment, the trial court also awarded Jackson $7,500 in conditional attorney’s
fees for an appeal to the court of appeals. 





[8]It is unclear from
the record whether the trial court found that all of Avery’s representations to
Jackson became part of the Agreement or whether the trial court found only that
Avery’s representations about the warranties Jackson would receive became part
of the Agreement. 





[9]To the extent Appellants
contend Jackson was required to present expert testimony that a tax certificate
is required to claim the tax credit, Appellants waived this contention by
raising it for the first time in their reply brief.  See
Priddy v. Rawson, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009,
pet. denied).  Moreover, expert testimony
is not always required to establish economic damages under the DTPA.  See Froemming
v. Perez, No. 04-05-00514-CV, 2006 WL 704479, at *3 (Tex. App.—San Antonio
Mar. 22, 2006, no pet.) (mem. op.) (finding sufficient evidence of $7,000 in economic
damages based on consumer’s lay testimony of $3,500 paid to defendant
orthodontist and estimated $3,500 to remedy defendant’s DTPA violations).





[10]The fee invoices
sent to Jackson were admitted into evidence without objection.