Opinion issued January 20, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00730-CV

———————————

Robert D. Lyall, Individually, and Lyall Brothers Collision Center, Appellants

V.

Ermenegildo
Bermudez,
Appellee



 



 

On Appeal from the County Civil Court at Law No. 1

Harris County, Texas



Trial Court Case No. 932238

 



 

MEMORANDUM OPINION

Following a
bench trial on a suit by appellee Ermenegildo Bermudez for various violations
of the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA)[1] and other causes of action,
the trial court entered judgment against appellants, Robert D. Lyall,
individually, and Lyall Brothers Collision Center (collectively, “Lyall”).  In one issue, Lyall challenges the legal and
factual sufficiency of the evidence supporting the trial court’s award of
treble damages.

          We affirm.

Background

In early 2008, Bermudez was
involved in a collision.  He took his
2007 Toyota Tundra truck to Lyall for repairs on February 6, 2008.  One of Lyall’s employees, Brian Watchmaker,
met with Bermudez, spoke with Bermudez’s insurance company, and gave Bermudez
an estimate for completing the repairs.  The
repairs were subsequently completed sometime in mid-February 2008.  There was apparently some kind of delay in
receiving payment from Bermudez’s insurance company, so the truck remained at
Lyall’s repair shop.

On March 11, 2008, Lyall sent a notice
of foreclosure to Bermudez informing Bermudez that he could prevent foreclosure
by paying $5,369.05.  The foreclosure
notice made no mention of storage fees. 
On March 14, 2008, after Lyall received final payment from the insurance
company, Bermudez returned to the shop, paid $970 to cover his deductible, and
took the truck home.  Approximately one
month later, on April 17, 2008, Lyall sent a wrecker driver to repossess the
truck from Bermudez.  Bermudez eventually
returned the truck to Lyall and filed this lawsuit to settle the legal issues
between them.

Bermudez alleged that Lyall engaged
in an unconscionable action or course of action under the DTPA, that Lyall
represented that an agreement conferred or involved rights, remedies, or
obligations which it did not involve or which were prohibited by law, and that
Lyall failed to disclose information concerning goods or services which was
known at the time of the transaction with the intent to induce him into the
transaction, in violation of section 17.46(b) of the DTPA.  Bermudez’s petition also alleged that Lyall’s
repossession of the truck constituted conversion, that Lyall had committed
common law fraud, and that Lyall had violated provisions of the Texas Property
Code governing repossession of vehicles.[2]

At the bench trial, Bermudez
testified that nothing was said to him, either in writing or verbally, about
storage fees at the time he left his truck for repair or in any subsequent interaction
until after he had received his truck back from Lyall.  None of the estimates or other documents
signed by Bermudez mentioned storage fees or provided notice that the vehicle
could be subject to repossession.

Bermudez testified that when Watchmaker
called in March to tell him that he could come pick up his truck, Watchmaker did
not say anything about a problem with a delay in receiving the payment from the
insurance company, nor did he say anything about storage fees.  Bermudez went to pick up his truck, paid the
$970 deductible, and waited for his truck to be delivered.  Bermudez testified that after Watchmaker had
already given him the keys to the truck, Watchmaker asked who was going to pay
the storage.  Watchmaker informed
Bermudez that he had accrued $240 in storage fees and “that [they] were going
to split it half and half.”  Bermudez
testified that he asked to see a document stating that he was required to pay
storage fees and that Watchmaker then told him that he did not have to pay the
storage fee.

Bermudez testified that he drove
the truck home and did not have any contact with Lyall until April 17, 2008,
when he was informed that a wrecker driver was looking for his truck.  At that time, Bermudez understood that he had
to relinquish the truck and request legal help to resolve the problem, so he
took the truck to Lyall.  Lyall accepted
the keys.  Bermudez testified that Lyall
did not inform him of what he needed to do to get the truck back and that, up
to the time of trial, Bermudez had not been in possession of the truck.  Bermudez testified that he did not receive
any mail or phone calls from Lyall after he returned the truck.  Bermudez also testified that he continued to
make loan and insurance payments on the truck for the fourteen months between
Lyall’s repossession of it and the trial.

          Lyall
testified that he had owned his repair shop since 1975.  He testified that although none of the
estimates or other documents mentioned storage fees, he had a sign posted in
the repair shop office stating, “NOTICE TO CUSTOMERS Deductibles are to be
cash. After 3 days of completion there will be storage charges of $42.50 per
day.”  Bermudez testified that he never
saw this sign.

          Lyall
testified that he overheard Watchmaker tell Bermudez that he would be charged
for storage if the shop was not paid, although it’s unclear from his testimony
whether this conversation occurred on March 14, 2008, when Bermudez came to
pick up the truck, or at some other time. 
Lyall also testified that Bermudez was told that he could file a claim
for the storage fees with his insurance company, but if the insurance company
did not pay the fees, Bermudez would have to pay them.  Lyall stated that he released the vehicle to
Bermudez with the understanding that Bermudez “would try to get [the fees]
paid.”  Lyall testified that he submitted
a request for the fees to Bermudez’s insurance company that was denied and that
Watchmaker called Bermudez to inform him that the insurance company refused to
pay the storage fees.[3]  Following the insurance company’s refusal to
pay the storage fees, Lyall decided to send the wrecker driver “to see if he
could figure out where the truck was.”

          Lyall
testified that after Bermudez returned the truck, Bermudez never came back to
discuss what he needed to do to have the truck returned to him, and Lyall “let
[the lien foreclosure] proceed.”  His
counsel questioned him regarding the foreclosure proceedings:

[Lyall’s counsel]:  And what happened to the vehicle?

 

[Lyall]:                 It came—I
finally gained title to it.

 

[Lyall’s counsel]:  You bought it at the auction?

 

[Lyall]:                 Well, it’s really—you buy—I mean,
it’s a mechanic’s lien.  You don’t—there’s
no auction to it.  There’s a mechanic’s
lien.  The shop—you
know, I got the vehicle.  The shop gets
the vehicle.

 

Lyall testified that he and his wife began driving
the vehicle after having the title put in his name on April 29, 2008 and that
they put approximately 10,000 miles on the truck.

The trial court rendered judgment
in favor of Bermudez, stating in its July 3, 2009 final judgment:

The
Court FINDS as follows: LYALL wrongfully repossessed BERMUDEZ’s truck, the reasonable
loss of use from the wrongful repossession is $10,000, LYALL knowingly
repossessed [] BERMUDEZ’s truck wrongfully[;] therefore[,] BERMUDEZ is entitled
to treble damages in the amount of $30,000, and BERMUDEZ’s reasonable attorney
fees are $3,000.

 

It
is hereby ORDERED, ADJUDGED, AND DECREED that Defendant Robert D. Lyall and
Lyall Brothers Collision Center return Plaintiff Ermenegildo Bermudez’s truck
within ten days of the date of this.

It
is ORDERED, ADJUDGED, AND DECREED for Plaintiff Ermenegildo Bermudez [to] have
and recover judgment of and from Defendant Robert D. Lyall and Lyall Brothers
Collision Center in the principle [sic] of $30,000.

 

The trial court also awarded Bermudez attorney’s
fees and pre- and post-judgment interest. 
This appeal followed.

Analysis

In his sole issue, Lyall challenges
the legal and factual sufficiency of the evidence supporting the trial court’s
award of treble damages.

          In an
appeal of a judgment rendered after a bench trial, the trial court’s findings
of fact have the same weight as a jury’s verdict, and we review the legal
sufficiency of the evidence used to support them just as we would review a
jury’s findings.  Daniel v. Falcon Interest Realty Corp., 190 S.W.3d 177, 184 (Tex.
App.—Houston [1st Dist.] 2005, no pet.) (citing Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994)).  In
reviewing a challenge to the legal sufficiency of the evidence, we determine
whether the evidence would enable reasonable and fair-minded people to reach
the verdict under review.  City of Keller v. Wilson, 168 S.W.3d
802, 827 (Tex. 2005).  In conducting this
review, we credit favorable evidence if a reasonable fact-finder could and
disregard contrary evidence unless a reasonable fact-finder could not.  Id.  We consider the evidence in the light
most favorable to the finding under review and indulge every reasonable
inference that would support this finding. 
Id. at 822.  We hold that the evidence is legally
insufficient only if (1) the record reveals a complete absence of evidence of a
vital fact, (2) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact, (3) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (4) the
evidence conclusively establishes the opposite of the vital fact.  Id. at
810.

          In
reviewing the factual sufficiency of the evidence, we consider all of the
evidence and set the finding aside only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  Arias
v. Brookstone, L.P., 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.]
2007, pet. denied) (citing Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). 


Whether reviewing the evidence for
legal or factual sufficiency, we assume that the fact-finder decided questions
of credibility or conflicting evidence in favor of the finding if he reasonably
could do so.  City of Keller, 168 S.W.3d at 819–20.  We do not substitute our judgment for that of
the fact-finder if the evidence falls within this zone of reasonable
disagreement.  Id. at 822.  The trial court
acts as fact-finder in a bench trial and is the sole judge of the credibility
of witnesses.  HTS Servs., Inc. v. Hallwood Realty Partners, L.P., 190 S.W.3d 108,
111 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  

 

 

          The
DTPA provides:

A consumer may maintain an
action where any of the following constitute a producing cause of economic
damages or damages for mental anguish:

 

(1) the use or employment by
any person of a false, misleading, or deceptive act or practice that is:

 

(A) specifically enumerated
in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and

 

(B) relied on by a consumer
to the consumer’s detriment; [or]

.
. . . 

 

(3) any unconscionable
action or course of action by any person. . . .

 

Tex. Bus. & Com. Code
Ann. § 17.50(a) (Vernon Supp. 2010). 
Section 17.46(b) enumerates causes of action for, among other things,
“representing that an agreement confers or involves rights, remedies, or
obligations which it does not have or involve, or which are prohibited by law”
and “failing to disclose information concerning goods or services which was
known at the time of the transaction if such failure to disclose such
information was intended to induce the consumer into a transaction into which
the consumer would not have entered had the information been disclosed.”  Id. §
17.46(b)(12), (24) (Vernon Supp. 2010).  

The DTPA also defines an “unconscionable
action or course of action” as “an act or practice, which . . . takes advantage
of the lack of knowledge, ability, experience, or capacity of the consumer to a
grossly unfair degree.”  Id. § 17.45(5) (Vernon Supp. 2010); Bradford v. Vento, 48 S.W.3d 749, 760
(Tex. 2001).  “To prove an unconscionable
action or course of action, a plaintiff must show that the defendant took
advantage of his lack of knowledge and ‘that the resulting unfairness was
glaringly noticeable, flagrant, complete, and unmitigated.’”  Bradford,
48 S.W.3d at 760 (citing Ins. Co. of N.
Am. v. Morris, 981 S.W.2d 667, 677 (Tex. 1998)).  “The relevant inquiry examines the entire
transaction, not the defendants’ intent.” 
Cooper v. Lyon Fin. Servs., Inc.,
65 S.W.3d 197, 207 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing Chastain v. Koonce, 700 S.W.2d 579,
583–84 (Tex. 1985) (“Section 17.45(5) is intended to be an objective
standard.”)).

The DTPA further provides that
“[i]f the trier of fact finds that the conduct of the defendant was committed
knowingly, . . . the trier of fact may award not more than three times the
amount of economic damages . . . .”  Tex. Bus. & Com. Code Ann. §
17.50(b)(1).  Under the DTPA, “‘knowingly’
means actual awareness, at the time of the act or practice complained of, of
the falsity, deception, or unfairness of the act or practice giving rise to the
consumer’s claim.”  Id. § 17.45(9).  Furthermore,
“actual awareness may be inferred where objective manifestations indicate that
a person acted with actual awareness.”  Id.; St.
Paul Surplus Lines v. Dal-Worth Tank Co., 974 S.W.2d 51, 53–54 (Tex. 1998).  Actual awareness “means that a person knows
that what he is doing is false, deceptive, or unfair” and does it anyway.  Dal-Worth
Tank Co., 974 S.W.2d at 53–54.  The
term “knowingly” lies on a continuum of “gross negligence, ‘knowingly,’
‘willful’ and ‘intentional’” with “gross negligence being the lowest mental
state and intentional being the highest.” 
Id. at 54.

Lyall argues that “[t]here is no
evidence that Lyall’s actions misrepresented his storage fee policy, or that if
he failed to disclose it, (which he denies) that such failure induced Bermudez
into the transaction.”  He further argues
that the trial court “found only that Lyall had wrongfully repossessed the
vehicle, but wrongful repossession is not a false, misleading and deceptive act
as described by the Act [that] even if ‘knowing,’ would establish the right to
treble damages.”  However, Bermudez’s
petition also alleged a cause of action for an unconscionable action or course
of action.  Bermudez argues that Lyall’s
“actions took advantage of [Bermudez’s] lack of knowledge, ability, and
experience to a grossly unfair degree by a blatant violation of the Property
Code [provisions governing worker’s liens and the sale of property].”

Section 70.001 of the Texas
Property Code provides in pertinent part:

(a) A worker in this state
who by labor repairs an article, including a vehicle, . . . may retain
possession of the article until:

 

(1)  the amount due under the
contract for the repairs is paid; or

 

(2) if no amount is
specified by contract, the reasonable and usual compensation is paid.

 

(b) If a worker relinquishes
possession of a motor vehicle . . . in return for a check, money order, or a
credit card transaction on which payment is stopped, has been dishonored
because of insufficient funds, no funds or because the drawer or maker of the
order or the credit card holder has no account or the account upon which it has
been drawn or the credit card account has been closed, the lien provided by
this section continues to exist and the worker is entitled to possession of the
vehicle . . . until the amount due is paid, unless the vehicle . . . is
possessed by someone who became a bona fide purchaser of the vehicle after a
stop payment order was made. . . . 

 

(c) A worker may take
possession of an article under Subsection (b) only if the person obligated
under the repair contract has signed a notice stating that the article may be
subject to repossession under this section. 
A notice under this subsection must be:

 

(1)
separate from the written repair contract; or

 

(2) printed on the written
repair contract, credit agreement, or other document in type that is boldfaced,
capitalized, underlined, or otherwise set out from surrounding written material
so as to be conspicuous with a separate signature line.

. . . .

 

(g) A motor vehicle that is
repossessed under this section shall be promptly delivered to the location
where the repair was performed or a vehicle storage facility licensed under
Chapter 2303, Occupations Code.  The
motor vehicle must remain at the repair location or a licensed vehicle storage
facility at all times until the motor vehicle is lawfully returned to the motor
vehicle’s owner or a lienholder or is disposed of as provided by this
subchapter.

 

Tex. Prop. Code Ann. § 70.001
(Vernon 2007).

          The
Property Code makes the following provisions for the sale of property:

(a) . . . [A] person holding
a lien under this subchapter . . . who retains possession of the property for
60 days after the day that the charges accrue shall request the owner to pay
the unpaid charges due if the owner’s residence is in this state and known.  If the charges are not paid before the 11th
day after the day of the request, the lienholder may, after 20 days’ notice,
sell the property at a public sale, or if the lien is on a garment, at a public
or private sale.

 

. . . .

 

(d) The lienholder shall
apply the proceeds of a sale under this section to the charges. . . .  The lienholder shall pay excess proceeds to
the person entitled to them.

 

Tex. Prop. Code Ann. § 70.005
(Vernon 2007).

Regarding the allegation that Lyall
engaged in an unconscionable action or course of action, Bermudez testified
that neither Lyall nor any of his employees informed him of any obligation to
pay storage fees at the time he delivered the truck for repairs or in any
subsequent discussions, that the March 11, 2008 foreclosure notice did not list
storage fees, and that he was first informed of the existence of storage fees
in the amount of $240 when he went to pick up the truck on March 14, 2008.  Bermudez testified that, after further
discussion, Watchmaker told him that he did not have to pay the storage fees,
and Bermudez was given possession of his truck after he paid his $970
deductible in addition to the check from the insurance company.  Likewise, none of the estimates given to and
signed by Bermudez contained any mention of storage fees or a notice that the
truck was subject to repossession.  The
only document in the record that mentioned storage fees was a sign printed on
paper that Lyall testified was posted in the repair shop office.  Bermudez testified that he never saw that
sign or any similar posting.

It is uncontested that Lyall later sent
a wrecker driver to repossess the truck from Bermudez at his place of
employment.  Bermudez testified that he
did not know why the truck was being repossessed at that time because he had
paid for the repairs in full and, after having been told by Watchmaker that he
did not need to pay storage fees, he had no further contact with Lyall until
the wrecker appeared at his job site.  It
is also uncontested that Lyall kept the truck for his own private use and put
approximately 10,000 miles on the vehicle. 
Looking at the entire transaction, we conclude that this evidence is
legally sufficient to support a finding of unconscionable conduct surrounding
the wrongful repossession of Bermudez’s truck,
[4] that Lyall’s actions took
advantage of Bermudez’s lack of knowledge, and “that the resulting unfairness
was glaringly noticeable, flagrant, complete, and unmitigated.”  See
Bradford, 48 S.W.3d at 760; Cooper,
65 S.W.3d at 207; see also City of Keller,
168 S.W.3d at 810, 822 (holding that
we must consider evidence in light most favorable to finding under review and
indulge every reasonable inference that would support finding and that evidence
is legally insufficient only if there is complete absence of evidence of vital
fact or if evidence offered to prove vital fact is no more than scintilla). 

Lyall also challenges the trial
court’s finding that he acted knowingly, arguing that “the record is bereft of
any evidence that Lyall knew what it was doing was false, deceptive, or
unfair.”  Lyall testified that he had
been in the business of auto repair for more than thirty years.  He testified that he had discussed the
storage fees with Bermudez’s insurance company and that he overheard Watchmaker
discuss the storage fees with Bermudez at some point, but he did not testify
that he had ever informed Bermudez of the need to pay storage fees.  Bermudez testified that, after he received
the March 11, 2008 foreclosure notice, he paid for the repairs in full and was
told at that time that he did not have to pay the $240 in storage fees mentioned
by Watchmaker after he had given Bermudez the keys to the truck.  Bermudez further testified that he did not
have any further communication with Lyall before Lyall repossessed his truck
and that he eventually discovered that Lyall was claiming $1,120 in unpaid
storage fees.  Lyall did not notify
Bermudez in writing that his vehicle was subject to repossession, sell the
vehicle at a public sale to cover the debt owed to him, or distribute the excess
proceeds as required by law.[5]  Rather, he retained the car for his own
personal use.

This evidence is sufficient to
support an inference that Lyall, who had been in the business of auto repair
for thirty years, knew that keeping a vehicle without telling its owner how to
satisfy the alleged lien and without following the proper foreclosure procedure
was wrong, but he did it anyway.  See Dal-Worth Tank Co., 974 S.W.2d at
53–54.  Thus, we conclude that the
evidence was also legally sufficient to support the trial court’s finding that
Lyall’s unconscionable conduct in repossessing the truck was committed
knowingly.  See City of Keller, 168 S.W.3d at 810, 822.

Lyall argues that he disclosed the
storage fees to Bermudez and that he overheard Watchmaker tell Bermudez that
Bermudez would have to pay the storage fees if the insurance company did
not.  While Lyall’s testimony on the
nature of the understanding between himself and Bermudez regarding storage fees
contradicted Bermudez’s testimony, the trial court clearly found Bermudez’s
testimony to be more credible, and we will not substitute our judgment in place
of the fact-finder’s.  See City
of Keller, 168 S.W.3d at 819–20, 822 (holding that we assume that
fact-finder decided questions of credibility or conflicting evidence in favor
of finding if he reasonably could do so and that we do not substitute our
judgment for that of fact-finder if evidence falls within zone of reasonable
disagreement); HTS Servs., Inc., 190
S.W.3d at 111 (holding that trial court acts as fact-finder in bench trial and
is sole judge of credibility of witnesses). 
Considering all of the evidence, we cannot conclude that the trial
court’s finding that Lyall knowingly repossessed the truck in a wrongful and
unconscionable manner is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust.  See Arias, 265 S.W.3d at 468.  

Thus, we conclude that the evidence
supporting Bermudez’s claim for knowing, unconscionable conduct under the DTPA
is both legally and factually sufficient to support the trial court’s judgment
and we overrule Lyall’s sole issue.

Conclusion

We affirm the judgment of the trial
court.

 

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

 











[1]           Tex.
Bus. & Com. Code Ann. §§ 17.41–.63 (Vernon 2002 & Supp. 2010).





[2]
          See Tex. Prop. Code Ann.
§§ 70.001(c), 70.005(a), (d) (Vernon 2007) (requiring that owner be notified of
repossession and given opportunity to pay debt and providing that repossessed
vehicle be sold at public auction).





[3]           The exact timing of these attempts was unclear from
the record.





[4]
          It is undisputed that Bermudez
never signed a notice stating that his truck was subject to repossession, which
was a violation of section 70.001(c) of the Property Code, that the truck was
used by Lyall and his wife, in violation of section 70.001(g), that Lyall did
not sell the truck at a public sale and apply the proceeds to the charges and
pay the excess to the person entitle to them, which violated section 70.005,
subsections (a) and (d).  See Tex.
Prop. Code Ann. §§ 70.001, 70.005.





[5]
          See Tex. Prop. Code Ann.
§§ 70.001(c) (requiring written, signed notice that vehicle is subject to
repossession), 70.005(a) (requiring public sale), 70.005(d) (requiring that
sale proceeds be applied to charges and that excess proceeds be distributed to
person entitled to them).